UNITED STATES of America ex rel. Edgar ROSS, Petitioner-Appellant,

v.

James C. FIKE, Warden, Illinois State Penitentiary, Pontiac, Illinois, Respondent-Appellee.

No. 75–1759.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1976.

Decided April 2, 1976.

Ronald P. Alwin, Robert B. Thompson, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Tracy W. Resch, Asst. Atty., Gen., Springfield, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and HOFFMAN, Senior District Judge.*

JULIUS J. HOFFMAN, Senior District Judge.

This is an appeal from an order of the district court denying a petition for a Writ of Habeas Corpus. At issue is whether the petitioner's Constitutional rights under the Fifth, Sixth and Fourteenth Amendments were violated by the questioning and argument of the State's Attorney at trial concerning petitioner's silence when confronted and identified at a lineup.

At approximately 10:00 P.M. on January 10, 1969, two men entered DD's Bar-B-Q at 5430 South State Street in Chicago, Illinois. The shorter of the two men announced a "stickup" and, during the course of the ensuing robbery, fatally shot a patron named James Blay. The taller robber remained in the rear of the restaurant with his gun drawn.

Some two months after the robbery the manager of the restaurant, Gladys Ambrose, and a customer who was in the restaurant at the time of the robbery, Sam Franklin, each identified Edgar Ross from a photograph as the taller of the two robbers. Ross was then arrested and once again identified by Mrs. Ambrose when he appeared in a lineup. Mr. Franklin, however, did not identify Ross at the lineup, claiming later that he was afraid to do so.

Ross was subsequently indicted by the Cook County Grand Jury on the charges of murder and armed robbery. At his trial, Gladys Ambrose was called as a witness for the prosecution and examined with respect to the lineup in which she identified Ross.

Q. Did you pick out a man from that group of men as being the man who came in on January 10, 1969, and shot Mr. James Blay?

A. I did.

Q. And who did you pick out?

A. The gentleman there—Mr. Ross. (Indicating)

\* \* \* \* \* \*

Q. And when you viewed the Defendant, Edgar Ross, did Mr. Ross say anything to you?

A. No, he didn't.

Q. And as you view Edgar Ross right now, is Edgar Ross the man that came in and shot James Blay on January 10, 1969?

A. Yes, he is.[1]

The police officer who conducted the lineup, Rudolph Nimocks, was also called by the prosecution, and during his direct examination testified as follows:

Q. At any time in your presence did the defendant say anything to either Mrs. Ambrose or Mr. Franklin?

A. I don't recall him saying anything to either one of the witnesses.

\* \* \* \* \* \*

Q. Did you give Edgar Ross any instructions when you placed him in the lineup?

A. I gave—I told him some privileges that he had.

---

* Senior District Judge Julius J. Hoffman of the Northern District of Illinois is sitting by designation.

1. Earlier in her testimony, however, Mrs. Ambrose stated that James Blay "lunged at the shorter guy with the gun and that is when the firing—I heard the shots. I did not see who shot. I know it was shots, just how many I don't know."

Q. Did you give him any dont's—anything not to do?

A. I told him he didn't have to say anything and that he could select the position that he wanted to be in in the lineup.

Q. But you told him he didn't have to say anything?

A. That is right. A public defender was there in his behalf at the time of the showup to see to his rights.

In his defense, Edgar Ross testified that he was at home when the robbery was committed. That testimony was corroborated by the testimony of his mother.

On cross-examination, however, the prosecutor again inquired about the lineup.

Q. Do you remember being placed in a showup or a lineup?

A. Yes, I do.

Q. Now, when you were placed in that lineup, did you see anybody you recognized?

A. Yes.

Q. At the time you saw somebody you recognized, did you say anything?

A. No, I was instructed that anything I say would be held against me.

Q. And who instructed you to that?

A. It was the bailiff downstairs, he told me.

Q. And you also had a public defender, is that correct?

A. Well, he wasn't representing me because he didn't come back and talk to me, ask me anything about my case, so I didn't feel he was representing me at all.

Q. But a bailiff did instruct you that you didn't have to say anything, is that correct?

A. Yes.

In addition to the testimony concerning defendant's silence at the lineup, the prosecutor made the following statement in his closing argument:

"You heard the Defendant say that he knew Mrs. Ambrose. You also heard him say he saw Mrs. Ambrose in April, sometime around the 23rd in a lineup. He also knew he was identified by this woman that he recognized. He knew that Mrs. Ambrose would identify him. Did he say anything? Did he say, 'Mrs. Ambrose, what are you doing, it is not me? Why are you picking me out? I know you, Mrs. Ambrose, don't you know me?' He didn't say anything to Mrs. Ambrose: 1, because he knew why Mrs. Ambrose was picking him out; 2, because he wanted to remain inconspicuous as possible. He tells us he didn't have to—he was informed that he did not have to say anything, that is probably correct, he does not have to say anything."

The jury returned a verdict of guilty on both charges, and Ross was sentenced to a term of 70 to 100 years in the Illinois State Penitentiary. On appeal, the Illinois Appellate Court rejected Ross' contention that the questioning and argument of the prosecutor denied him a fair trial, stating:

"Defendant's third contention on appeal was that his Fifth Amendment rights were denied when the prosecution introduced evidence that the defendant remained silent at the lineup and the prosecution argued to the jury that defendant's silence was evidence of his guilt. Both the defendant and Officer Nimocks testified that the defendant was told that he could remain silent at the lineup. This testimony fully explained to the jury that the defendant was instructed to remain silent at the lineup. The trial court improperly admitted evidence of defendant's silence, but this error did not contribute to the finding of guilty and therefore was not prejudicial error."

*People v. Ross*, 11 Ill.App.3d 650, 297 N.E.2d 328, 330 (1st Dist.1973).

Following the denial of applications for leave to appeal to the Illinois Supreme Court, and for Certiorari to the United States Supreme Court, Ross filed a petition for a Writ of Habeas Corpus in the United States District Court for the Southern District of Illinois. In denying that petition, the court observed that "[t]he alleged constitutional violations were not objected to

at trial and thus should be deemed to have been waived", and held that

> "[i]n light of the entire record, it is clear beyond a reasonably doubt to this court that the error was harmless. Petitioner's reasons for remaining silent at the lineup were clearly explained and were recognized by the prosecutor before the jury. The 'in court' identification by two persons, which the jury very evidently believed and relied upon to convict, was in no way fortified or made more convincing by the discussion of petitioner's silence at the lineup."

*United States ex rel. Edgar Ross v. James C. Fike*, No. P–CIV–74–138 (S.D.Ill., Dec. 27, 1974).

■ At the outset, we observe that the doctrine of waiver, or deliberate by-pass, is not applicable where, as here, the state appellate court voluntarily considered the merits of defendant's constitutional claims.[2] *Warden v. Hayden*, 387 U.S. 294, 297 n.3, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782, 786 (1967).

■ Moreover, while not all references to a defendant's silence are prejudicial, see, e. g., *United States v. Wick*, 416 F.2d 61 (7th Cir. 1969), cert. denied, 396 U.S. 961, 90 S.Ct. 436, 24 L.Ed.2d 425 (1969), "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967). Thus, "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173 (1963).

Here, it is undisputed that the prosecution's case rested upon the identification of Edgar Ross as the taller of the two robbers by Gladys Ambrose and Sam Franklin.[3] However, during the 8 to 10 minutes the robbers were in the restaurant, Mrs. Amb-

rose directed her attention to the actions of the shorter robber, then looked down at the floor as they made their escape. Yet she identified a photograph of Edgar Ross two months later, even though she testified that there was nothing unusual about his build, and only his eyes and forehead were visible above a scarf that was wrapped around his face. Sam Franklin also identified Edgar Ross, although he was unable to pick him out of the lineup.

■ In view of the dangers inherent in such eyewitness identification, see *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and the absence of any "overwhelming" evidence of guilt, compare *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), we are unable to conclude that the references to defendant's silence were harmless beyond a reasonable doubt. *Chapman v. California, supra.* Furthermore, we are not persuaded that the "strong negative inference" likely to be drawn by the jury from the fact that Ross remained silent when confronted and identified, particularly when his silence lacked any significant probative value, was overcome by the subsequent explanations of his Fifth Amendment rights. *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

Therefore, since Ross was denied the right to a trial free from prejudicial inferences, the judgment of the district court denying the petition for a Writ of Habeas Corpus must be

Reversed.

---

2. Unlike the facts now before us, in *United States ex rel. Allum v. Twomey*, 484 F.2d 740 (7th Cir. 1973), upon which the district court based its finding of waiver, "the omission giving rise to the waiver occurred in the trial court as well as on appeal." 484 F.2d at 745.

3. A third witness to the robbery, Maurice Hall, was unable to identify Ross.