In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3712

ANTOINE TOLIVER,

*Plaintiff-Appellee,*

*v.*

DONALD HULICK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 7534—**Joan B. Gottschall**, *Judge.*

ARGUED OCTOBER 20, 2006—DECIDED DECEMBER 4, 2006

Before EASTERBROOK, *Chief Judge*, and BAUER and
EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* Antoine Toliver was convicted
of first degree murder and attempted first degree murder
after a jury trial in the Circuit Court of Cook County. He
was sentenced to consecutive prison terms of 40 and 6
years. The Illinois Appellate Court affirmed his conviction,
and the Illinois Supreme Court denied leave to appeal. His
subsequent petition for a writ of habeas corpus, filed in
the District Court for the Northern District of Illinois,
was granted based on one of the issues he raised: that his
constitutional right to confront the witnesses against him
was violated when he was not allowed to cross-examine

the only eyewitness against him regarding his immigration status. The State of Illinois has appealed.

The witness is Samir Younes, who was born in Morocco. He was employed at the L-Town Food and Liquor Store on North Avenue in Chicago. His duties included opening the door for customers and watching for shoplifters. Younes testified that on the night in question he witnessed shootings, which resulted in the death of one man and the wounding of another. He said he opened the door of the store for the soon-to-be shooting victims and then a bit later for Toliver and another man—both when they entered and when they left the store. After the men were all outside the store, Younes saw Toliver pull a gun, point it at the victims, and fire about five shots. One man fell to the ground and another managed to run off. Toliver and another man got in a car and drove off. Frightened, Younes locked the door and went to the back of the store. While there, he heard two more shots. The police arrived about 20 seconds later.

Initially, when the police questioned Younes about what he saw, he was uncooperative. But about 6 days later, he was again at work when Toliver and others came back into the liquor store. Younes recognized Toliver as the shooter and contacted Detective Barney Graf, whom Younes knew because Graf had arrested him on a municipal charge. Police then arrested Toliver and took him to the station, where Younes picked him out of a lineup. Ultimately, about 20 hours after Toliver was taken to the station and had been questioned on and off during that time, he confessed to the shootings. Toliver was charged, and his first trial ended in a mistrial.

Prior to the second trial, the State moved in limine to prohibit defense counsel from asking Younes about his immigration status. The prosecutor said his understanding was that Younes was in the country with "a passport and visa." In response, defense counsel argued that Younes

was an illegal immigrant whose immigration status was relevant because, as an illegal, he had a motive to cooperate with the police to influence them to not report him to what was then the Immigration and Naturalization Service, where he could face possible removal from the country.

To support the argument that Younes was an illegal immigrant, Toliver provided two letters from the Department of Justice. The first letter stated:

> The Immigration and Naturalization Service has advised this office that it conducted a search of its computerized indices for records regarding the current immigration status, work authorization and eligibility to accept employment for Samir Younes, born March 28, 1972, in Morocco. To date, no records have been located establishing that this individual has any immigration status in the United States.

The second said:

> The above subpoena seeking the records of the Immigration and Naturalization Service relating to Samir Younes had been referred to this office for a determination whether any requested materials can be disclosed or testimony authorized under the federal regulations applicable to such subpoenas, 28 C.F.R. sec. 16.21, *et seq.*
>
> As a result of your subpoena, the Immigration and Naturalization Service was requested to check its records to determine whether it had a file relating to Samir Younes, date of birth March 28, 1972, birth place, Morocco. The INS has advised this office that it cannot locate any records responsive to your subpoena under the information provided.

The trial judge was not convinced that the letters provided a good-faith basis to conclude Younes was an illegal alien. The judge pointed out that if Younes were asked

about his status, counsel would be unable to prove or disprove what he said. Counsel agreed that Younes would have to be taken at his word. In the end, the judge did not allow questioning as to Younes' status in an attempt to impeach his credibility. As we said, the state appellate court upheld the exclusion.

Having exhausted his state remedies, Toliver filed this petition for a writ of habeas corpus in federal court. In ruling on the petition, the district judge concluded that it was a violation of Toliver's confrontation rights to preclude asking Younes about his status and that the error was not harmless. She granted the petition. On the State's appeal, we review the district court's decision *de novo. Barrow v. Uchtman*, 398 F.3d 597 (7th Cir. 2005).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petitioner is entitled to a writ of habeas corpus when the decision of the state court is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000). A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams*, at 413. An unreasonable application of clearly established law occurs "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, at 413. To entitle a petitioner to relief, the state court's decision must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).

In this case, the state appellate court correctly identified the general principle governing this case; that is, that a defendant has a constitutional right to confront

the witnesses against him. *Douglas v. Alabama*, 380 U.S. 415 (1965); *Davis v. Alaska*, 415 U.S. 308, 316 (1974). The issue is whether the state court decision involves an unreasonable application of the principle. When, as here, the case falls under the "unreasonable application" prong of the analysis, it involves a mixed question of law and fact, and we defer to a reasonable state court decision. *Anderson v. Cowan*, 227 F.3d 893 (7th Cir. 2000).

Deference, however, does not prevent us from observing that what happened in the state trial court raises a perplexing question. The State said that Younes had a passport and visa. Why, then, did it object to inquiry as to his immigration status? The thrust of the argument seems to be that asking Younes about his status was simply an attempt to smear him as, to use the prosecutor's words, an "illegal foreigner." But there would have been ways to inquire as to Younes' status without, in the first instance, accusing him of being an illegal alien. The prosecution had already asked Younes where he was from and he said Morocco. Defense counsel could simply have asked what his residency status was in the United States. If he said he was a citizen or a visitor with a passport or a visa, that would have been the end of the matter. If he had said he was an illegal immigrant, then his status would have been out in the open and could have been used to impeach his credibility. There seems little legitimate reason to have restricted the inquiry and absolutely no reason not to find the answer to the question outside the presence of the jury. As we discovered, to our surprise at oral argument, no one knows for sure even at this time what Younes' status was. We asked at oral argument whether Toliver's lawyer proposed to question Younes on *voir dire*, and the advocates did not agree on the answer. After argument, counsel for Illinois filed a letter reporting "that there is nothing in the record showing that petitioner's counsel even asked the trial judge for the opportunity to question Younes outside the presence

of the jury regarding his immigration status." We gather (from the lack of a response from Toliver's current legal team) that this is correct. So any suggestion that the state trial judge dropped the ball on this point is off the mark.

Though it has no relevance to the constitutional issue before us, we note that the Illinois Appellate Court—and counsel for the State at oral argument—said that it violates Illinois law to ask a question about immigration status unless the witness is, in fact, an illegal alien. For this proposition, the appellate court relied on three cases: *People v. Clamuextle*, 626 N.E.2d 741 (Ill. App. 1994); *People v. Turcios*, 593 N.E.2d 907 (Ill. App. 1992); and *People v. Austin*, 463 N.E.2d 444, 453 (Ill. App. 1984). We have trouble reading the cases so broadly. They make clear that status as a illegal alien can be used to argue bias on the part of the witness. What is less clear is whether one can ask the questions which would establish illegal status. In *Austin*, the court seemed to imply that one could ask the questions of any witness and then argue bias as to those witnesses who were illegal:

> Thus, we believe defendant was entitled to present to the jury the residency status of the State's witnesses and argue bias if all or some of these witnesses were in fact illegal aliens.

*Austin*, at 452. Nonetheless, it was on the basis of Illinois cases that the Illinois Appellate Court upheld the exclusion of the evidence.

Turning back to the constitutional analysis (which is the only relevant question before us), we note that what the state court did, after identifying the correct principles of law on confrontation, was to apply state law as a basis for exclusion of the evidence. The question for us is whether the analysis resulted in an application that was unreasonable under Supreme Court precedent.

The right to cross-examination is, of course, not without limitation. It can be limited if it would produce marginally relevant information or entail the harassment of a witness:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Toliver argues that the letters showing that the INS had no record of Younes proved that he was an illegal immigrant and that therefore precluding the testimony regarding Younes' status violated Toliver's rights. We do not agree that the only plausible inference from the letters is that Younes was in the country illegally. An alternate explanation is that the INS files do not include information on United States citizens. And many United States citizens are born abroad. That could have been the case with Younes. Other reasons might well explain why the records from the INS didn't establish that Younes was in the country illegally. One reason may be that the search was requested by birth date; if Younes was not born on March 28, 1972, or if the INS filed his records by some other date, the search would have turned up nothing, but revealed nothing either. Yet another possibility is that Younes held a visa issued by the State Department in Morocco. Until a couple of years ago, the INS did not keep records on aliens who enter with visas issued abroad (one big reason why the agency also did not know when these visas expired, and thus did little to catch and remove aliens who overstayed their authorization).

That said, we observe that it is a close question whether Toliver's Sixth Amendment rights were violated. Precluding the testimony was not wise, not because Younes was shown

to be an illegal immigrant—because he was not—but simply because it makes no sense under these circumstances not to allow the question to be asked. But being unwise is not the same as being unconstitutional. The state appellate court finding that the limitation on cross-examination was not error cannot be said to be an unreasonable application of Supreme Court precedent. The information was, at best, marginally relevant.

Additionally, however, even if we were to find that it was a violation of Toliver's rights not to be allowed to ask the question, that would not be the end of the matter. On collateral review, an error requires reversal only if it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). *See also Aleman v. Sternes*, 320 F.3d 687 (7th Cir. 2003). Toliver argues that there was error and it was not harmless because Younes' testimony was less than convincing, the evidence was not strong, a first trial resulted in a mistrial, and the jury took 8 hours to reach a verdict in the second trial. These arguments do not support a conclusion that prohibiting the inquiry was prejudicial to Toliver.

Both the mistrial and the length of time the jury took deliberating have no proper bearing on the issue. *United States v. Hamann*, 688 F.2d 507 (7th Cir. 1982); *United States v. Cunningham*, 108 F.3d 120 (7th Cir. 1997). Further, the evidence of guilt was, as the Court found in *Brecht*, "if not overwhelming, certainly weighty." Younes' testimony was not weak. His failure to cooperate with the police immediately was explained: he was frightened. When he saw Toliver again, he called the police and later picked Toliver out of a lineup. His recounting of the details of the shooting could certainly have convinced a jury of Toliver's guilt.

Finally, and very importantly, Toliver confessed to the crime. A confession is strong evidence of guilt. Toliver

argues that the district judge was correct to conclude that his confession should be disregarded. She credited Toliver's testimony that he was at a neighbor's house at the time of the shootings and his claim that he was coerced into confessing. The problem is that the state trial court held a suppression hearing regarding the confession and found it to be admissible. Toliver did not raise the suppression issue in his direct state appeal. It follows that Toliver's confession, on the basis of the present record before us, cannot be disregarded in a harmless error analysis.

So we conclude that the failure to allow questions regarding Younes' immigration status cannot be found to have had a substantial effect on the verdict. We find that prohibiting the questions could at best be viewed as no more than harmless error.

The district judge limited her analysis to the confrontation issue because she found it to be dispositive. Accordingly, on remand, she will need to consider the remaining issues raised in Toliver's petition. One of those issues, of course, is that Toliver was denied his Sixth Amendment right to effective assistance by the failure of his counsel, as he put it in his petition, "to properly present a motion to suppress the statement made by Petitioner . . . ."[1]

The judgment of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.

---

[1] The issue he raised is not quite as the district judge stated. Toliver is not saying counsel was ineffective for failure to "present a motion" but for his failure to "properly" present the motion. As is implicit in the latter statement, counsel, did, in fact, file a suppression motion—properly or not.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*