**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 12, 2008
Decided September 24, 2008[1]

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-1293

| | |
|---|---|
| ANTOINE TOLIVER, | Appeal from the United States District |
|     *Petitioner-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
|     *v.* | |
| | No. 00 C 7534 |
| DONALD HULICK, | |
|     *Respondent-Appellee*, | Joan B. Gottschall, *Judge*. |

**O R D E R**

Antoine Toliver is making a return visit to our court. In 1997, he was convicted of first degree murder and attempted first degree murder by a jury in Cook County, Illinois, and sentenced to 46 years in prison. After exhausting his state court remedies, he filed a habeas petition in federal district court. The district court granted relief,

---

[1] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

concluding that Toliver was denied his constitutional right of confrontation when the state court prohibited him from asking a key witness (actually the only eyewitness to the murder) about that witness's immigration status. We disagreed. *Toliver v. Hulick*, 470 F.3d 1204 (7th Cir. 2006). Because the district court had found it unnecessary to examine all of Toliver's claims, we reversed and remanded with instructions to evaluate the balance of the petition. On remand, the district court found that the remaining claims lacked merit. Toliver is here again appealing that decision.

We set out the facts in our first opinion, and we will not repeat them here. Suffice it to say that the eyewitness, Samir Younes, testified that he saw Toliver leave a liquor store and shoot two men with a gun. There was nothing particularly unbelievable about Younes's testimony--he worked at the store and had a good chance to witness the incident--so defense counsel sought to impeach him based on the fact that he may have been in the country illegally. The trial judge barred defense counsel from questioning Younes about his immigration status, partly because counsel did not have the evidence to prove whether Younes actually *had* a right to be here.[2] The state appellate court upheld this determination, but the district court, as we noted, agreed with Toliver that the state trial court infringed his confrontation rights. Although we found it a "close question," *id.* at 1208, we reversed because the decision to exclude, however unwise, did not amount to constitutional error. And assuming the error did rise to that level, we found it harmless.

On remand, the district court decided that Toliver had procedurally defaulted a number of the claims that it did not review on the first go-round. Toliver does not challenge that determi-nation, but he questions the court's treatment of the issues it did reach.

This brings us back to the evidence at trial. Although Younes's testimony was important, it wasn't the only proof against Toliver. Toliver confessed to the crime following police interro-gation, which we deemed "strong evidence of guilt." *Id.* at 1209. But Toliver recanted when he took the stand at trial. He testified that he was smoking marijuana with friends at the time of the incident, and one of his friends, Gabriel Garcia, confirmed this story. Garcia testified he was certain he had been with Toliver at the time of the murder.

---

[2] As strange as it may sound, we do not know--even now--Younes's immigration status.

A questionable alibi to begin with--juries aren't typically impressed with drug use-- the explanation became all the shakier when two jurors overheard Garcia tell someone in the audience that testifying was "the least [he] c[ould] do for Antoine." After deliberating for a few hours, the jurors sent a note to the judge telling her what they had overheard and asking her how they should "handle" it. When the judge told the attorneys about the note, defense counsel did not ask the judge to question the jurors individually to ascertain whether this improper communication affected their ability to decide the case based on the evidence, nor did he request a mistrial. Accordingly, the trial judge simply told the jury:

> Ladies and gentlemen, it is your duty to determine the facts and to determine them only from the evidence introduced during the trial. You are not to concern yourselves with comments or conduct that was not introduced as evidence during the trial.

Toliver says this was insufficient to ensure a fair trial, and he contends counsel was constitutionally ineffective in failing to request individual questioning or a mistrial. The Illinois Appellate Court rejected these contentions, and the district court, following our remand, held that they did not justify the issuance of a writ of habeas corpus. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is entitled to habeas relief when the decision of the state court is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000). Although Toliver presents his issues as distinct claims--he says his rights under the Due Process Clause *and* the Sixth Amendment were violated--they collapse into one analysis. If there was no due process violation, it is unlikely that counsel performed ineffectively in failing to object or request a different manner of proceeding.

Because we start with a presumption of effectiveness, a petitioner asserting ineffective assistance of counsel faces an uphill battle. *See United States v. Hatten-Lubick*, 525 F.3d 575, 579 (7th Cir. 2008). To achieve victory, Toliver must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Second, he must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Toliver fails to meet either of these requirements.

Toliver does not argue that his lawyer's performance was deficient *overall*, but just that he erred in not moving for individual questioning of the jurors or for a mistrial. Although a single mistake can support habeas relief if it undermines confidence in the outcome, *id.*, counsel's conduct in this case does not match that description. The state appellate court rejected Toliver's argument, reasoning that even if counsel erred, the mistake yielded no prejudice because the court's instruction to the jury cured any taint from the stray remark. We agree with the district court--that decision was not an unreasonable application of the *Strickland* standard or the underlying due process principles.

The Due Process Clause promises an accused the right to an impartial jury, one that determines guilt based on the evidence and the judge's instructions rather than preconceived notions or extraneous information. *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992); *Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984). "In addition--and this is critical--due process requires the trial judge, if he becomes aware of a possible source of bias, to 'determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial.'" *Oswald v. Bertrand*, 374 F.3d 475, 477-78 (7th Cir. 2004) (quoting *Remmer v. United States*, 347 U.S. 227, 230 (1954)). A judge should normally undertake this assessment by questioning jurors directly, along with the participation and input of counsel. *See Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Porter v. Gramley*, 112 F.3d 1308, 1317 (7th Cir. 1997). However, that is not always required. The adequacy of a judge's response "is a function of the probability of bias; the greater that probability, the more searching the inquiry" should be. *Oswald*, 374 F.3d at 480. In many cases, improper communication or contact with jurors is deemed "presumptively prejudicial." *Remmer*, 347 U.S. at 229. But that presumption is not omnipresent, and we have suggested that "no *Remmer* hearing is necessary" where a "comment heard by a juror was ambiguous and innocuous." *Whitehead v. Cowan*, 263 F.3d 708, 724-25 (7th Cir. 2001); *see also Sims v. Rowland*, 414 F.3d 1148, 1155 (9th Cir. 2005) ("*Remmer* and *Smith* do not stand for the proposition that *any time* evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias.").

Due process did not require the trial judge in this case to question the jurors to determine whether they could remain impartial. Garcia's statement--that testifying on behalf of Toliver was the least he could do--could easily be construed as nothing more than a confirmation of friendship. Making the trip to court, in other words, was the bare minimum Garcia could do for a friend. Granted, a juror could interpret it more cynically, i.e., lying was the least Garcia could do. If not innocuous, then, the overheard

comment was still ambiguous. Nonetheless, it might be fair to presume prejudice had that been the end of things. But it wasn't. The trial judge instructed the jury to disregard the comment and focus only on the evidence introduced at trial. In the circumstances of this case, that was adequate to ensure Toliver was tried by an impartial jury.

And since there was no constitutional error on the part of the trial judge, counsel did not perform ineffectively by holding his tongue. An attorney has no duty to make a losing argument, *see United States v. Edwards*, 777 F.2d 364, 365 (7th Cir.1985) (per curiam), and lawyers often avoid colorable objections for strategic reasons. A lawyer's choices in conducting the litigation, as we recently stated in a case involving a different Toliver, are owed a measure of deference under the *Strickland* analysis. *Toliver v. McCaughtry*, ___ F.3d ___, ___, 2008 WL 3917124, *7 (7th Cir. Aug. 27, 2008). Whatever counsel's thinking in this case was, his conduct did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. On the other hand, even if counsel should have moved for individual questioning or a mistrial (assuming also that the trial court erred in responding to the jury's note), there has been no showing of prejudice. Again, the comment in this case was ambiguous, and the judge's instruction was reasonably crafted to cure any taint it may have imparted. What's more, the evidence against Toliver was far from marginal--an eyewitness placed him at the crime scene and the police secured a confession. The alibi which the overheard comment would tend to undermine was not convincing, so it is unlikely the remark had much effect on the jury's deliberations. In light of the judge's instruction to focus on the evidence introduced at trial, we perceive no reasonable probability that the result of the proceeding would have been different had counsel requested individual questioning or a mistral.

In sum, we agree with the district court that Toliver is not in custody in violation of the Constitution. The state appellate court's decision to that effect was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

The judgment of the district court is AFFIRMED.