In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-1403

DARRYL ALLEN,

*Petitioner-Appellant,*

*v.*

NEDRA CHANDLER,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 7631—**Marvin E. Aspen**, *Judge.*

ARGUED JULY 8, 2008—DECIDED FEBRUARY 11, 2009

Before BAUER, COFFEY, and ROVNER, *Circuit Judges*.

COFFEY, *Circuit Judge*. The General Store in Joliet, Illinois, was the scene of an armed robbery on the night of October 26, 1990, and the store clerk on duty Cheryl Smithson identified Darryl Allen as the perpetrator—first from a photographic array and also during his two state trials. The first of the two trials ended in a dead-locked jury, but the second trial resulted with Allen being convicted of armed robbery, which was upheld on appeal. In the petitioner's initial appeal of his conviction

he alleged that his trial counsel was ineffective for eliciting testimony from Detective Farmer referring to the defendant's post-arrest silence, and also the petitioner argued that his appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on direct appeal. The state appellate court rejected each of these arguments, holding that, even if counsel's performance was deficient, he was not prejudiced by the trial counsel's question because the evidence of guilt was overwhelming. We affirm.

## I.

Allen's second jury trial lasted less than a day. As previously pointed out the store clerk identified the armed robber and during her testimony referred to him as a frequent customer and went on to explain that he had visited the store on two different occasions on the night of the robbery. Smithson's testimony also revealed that the robber was unmasked, which afforded her ample time to observe and recognize him. She also mentioned that he had been a frequent patron of the store. She further stated that the unmasked robber displayed a gun while standing within a foot of her and directed her to give him the money in the cash register. Shortly after the crime, the witness Smithson immediately identified Allen as the armed robber during a photo lineup and again at trial. In addition to Smithson's eyewitness account, a videotape of the robbery was displayed to the jury. Even though the pictures on the videotape film were not of perfect quality, they were of sufficient quality to assist

the jury in substantiating Smithson's testimony as well as her identification of Allen as the robber.

Finally, the State as proof of consciousness of guilt offered the evidence that Allen fled to Georgia about two months after the crime. It is well established that evidence of flight is admissible as a circumstance tending to show a consciousness of guilt. *See Illinois v. Pursley*, 672 N.E.2d 1249, 1255 (1996).

It is also interesting to note that during his cross-examination of the investigator, defense counsel, as distinguished from appellate counsel, elicited the following testimony concerning the post-arrest questioning of Allen:

> Counsel: Okay. Now, you said that you read Mr. Allen the rights off the *Miranda* form, correct?
>
> Farmer: That is correct.
>
> Counsel: But you filled the answers out?
>
> Farmer: That is correct.
>
> Counsel: Okay. Isn't it a fact that Mr. Allen refused to answer any questions?
>
> Farmer: He refused to answer questions in reference to the case in which I asked him about.
>
> Counsel: Okay. So, he wasn't cooperating with you, correct?
>
> Farmer: That is correct.

The jury returned a verdict of guilty, and the judge sentenced Allen to forty-eight years' imprisonment.

On appeal, Allen challenged the trial court's refusal to instruct the jury on robbery, a lesser-included offense. He also argued that the presentence investigation report was limited because the probation officer should have interviewed more people. Allen undermined this contention by refusing to be interviewed or cooperate in the preparation of the presentence report. Finally, the defendant complained that the trial judge abused his discretion when sentencing him to forty-eight years in prison. The appellate court rejected this argument as Allen had been convicted of a number of crimes (at least twenty other armed robberies)—including a prior armed robbery at the same store. The latest robbery was committed while he was on parole status. Allen's conviction and sentence of forty-eight years were affirmed on appeal. *See Allen*, 619 N.E.2d at 827. Allen next brought a motion for leave to appeal, which the state supreme court denied. *People v. Allen*, 624 N.E.2d 809 (Ill. 1993).

Allen then proceeded with a second round of postconviction litigation in the Illinois courts, arguing that his trial counsel rendered ineffective assistance by eliciting testimony concerning his post-arrest silence, and that prior appellate counsel was ineffective in not raising this issue on direct appeal. The state appellate court did not reach the question of whether trial counsel's elicitation of the testimony fell outside the range of professionally competent assistance, and rather focused on the prejudice prong. Over a dissent, the court upheld the denial of relief on this issue, reasoning that Allen could not have been prejudiced because the totality of the evidence of his guilt was "overwhelming." *People v.*

*Allen*, No. 3-99-9761 (Ill. App. Ct. June 11, 2001) (unpublished). The state appellate court's majority explained that Smithson's identification of Allen was both prompt and strong because she had more than ample opportunity to observe the unmasked perpetrator at close range, and also remembered him as a frequent customer of the store, and furthermore she had opportunities to observe him on two separate occasions in close proximity (as little as one foot) on the evening of the robbery. *Id*. at 5. The majority added that the surveillance video "tended to corroborate" Smithson's testimony and that Allen's flight and arrest in the State of Georgia some two months after the robbery "tend[ed] to show consciousness of guilt." *Id*. The state supreme court again denied leave to appeal. *People v. Allen*, 763 N.E.2d 320 (Ill. 2001).

Subsequently, Allen filed a petition for writ of habeas corpus in federal court. The district court concluded that the state appellate court's application of *Strickland* was not unreasonable, and thus controlling. Allen challenges that conclusion here.

## II.

We agree that *Strickland* has reasonably been applied to Allen's claim of ineffective assistance of counsel. A federal court may not grant a habeas corpus petition unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d)(1). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), ineffective assis-

tance of counsel is a mixed question of law and fact reviewed *de novo* with a strong presumption that the attorney performed effectively. *See United States v. Fudge,* 325 F.3d 910, 923 (7th Cir. 2003). The law governing ineffective assistance claims, announced in *Strickland*, requires that Allen must demonstrate that (1) counsel's performance fell "outside the wide range of professionally competent assistance" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 690, 694. The bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus. To demonstrate prejudice under *Strickland*, the petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The state appellate court rejected this claim on the merits, holding that petitioner could not satisfy *Strickland*'s prejudice prong because overwhelming evidence supported his conviction.

The petitioner advances three other challenges to the state appellate court's adjudication of his claims. Initially, he argues that the court failed to apply the correct legal standard for prejudice, resulting in a decision contrary to *Strickland*. Second, he contends that, to the extent the court applied the correct standard for prejudice under *Strickland*, it was an unreasonable application of the law

to the facts of the case. Finally, he argues that the court did not properly consider his claim that his appellate attorney was ineffective.

### A. A decision "contrary to" *Strickland*'s prejudice prong.

Allen argues that the state court's decision was "contrary to" the prejudice prong of *Strickland* because, in assessing whether counsel's performance prejudiced him, the court wrote that counsel's alleged error "did not tip the scales of justice unfairly in favor of the state." Although the court repeatedly referred to *Strickland*, Allen contends that the state appellate court's use of its "scales of justice" language raised his burden of proof, essentially requiring him to show that it is "more likely than not" that his attorney's deficient performance altered the outcome of the case—a standard the Supreme Court explicitly rejected in *Strickland*, 466 U.S. at 693.

Allen concedes in his reply brief that he waived this argument by failing to raise it in the district court. *See Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). The argument, even if properly raised, is meritless. As relevant here, a state court's decision is "contrary to" federal law if it is "substantially different" from or "opposite to" relevant Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). No doubt there is a semantic difference between the "tipping the scales of justice" standard and the actual *Strickland* test. But there is no reason to think that the standard is substantially different

from the *Strickland* test, nor that it is the equivalent of a "more likely than not" standard. "Tipping the scales of justice unfairly" is a vague metaphor that lacks any obvious connection to any legal standard. The parties have not identified a source for the language, but we note that it is currently used in Illinois cases to describe the showing of prejudice required under the state's "plain error" test. *See, e.g., People v. Piatkowski*, 870 N.E.2d 403, 411 (Ill. 2007) (allowing review of unpreserved error, regardless of its seriousness, if it is "clear or obvious" and "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant."). That might suggest that the language is more akin to a "clear probability" standard, but it's impossible to know—not only because the Illinois courts to date have not said so, but because the language had not been used at the time of the state appellate court's decision in 2001. Given this ambiguity, along with the fact that earlier in its opinion the Illinois appellate court cited *Strickland*, a single reference to "tipping the scales" does not demonstrate that the court applied a standard contrary to clearly established federal law. Rather, "it is more likely that the court stated its conclusion imprecisely than that it applied a different standard." *Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006); *see Eckstein v. Kingston*, 460 F.3d 844, 850-51 (7th Cir. 2006).

### B. An "unreasonable application" of *Strickland*'s prejudice prong.

Allen also contends that the state appellate court unreasonably applied *Strickland* in concluding that the evi-

dence supporting his conviction was "overwhelming." He alleges that the state's single-eyewitness case coupled with the prior mistrial show that the judge's verdict was a close call. And he argues that, because the case hinged on Smithson's identification, Detective Farmer's testimony that he was silent and uncooperative when asked about the crime might have eliminated any reasonable doubt in the jurors' minds.

A state court's decision is "an unreasonable application" of federal law if the court "identifies the correct governing legal principle" from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. An "unreasonable application" is one that is "not only erroneous, but objectively unreasonable," *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003), which in turn means "something like lying well outside the boundaries of permissible differences of opinion," *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (citation and quotation marks omitted). In other words, "a habeas petitioner must show that the state court's decision unreasonably applied clearly established Supreme Court precedent by unreasonably extending a rule to a context where it should not have applied or by unreasonably refusing to extend a rule to a context where it should have applied." *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008).

We are of the opinion that the state appellate court reasonably applied *Strickland* when it concluded that the evidence presented against Allen was compelling enough to hold that he was not prejudiced by his

attorney's elicitation of Farmer's testimony. Although the case against Allen relied primarily on Smithson's eyewitness identification, that identification was not only reliable but very strong. She had an opportunity to observe the unmasked robber at close range, fingered Allen without hesitation in a photographic array as well as during her testimony at two trials, and identified him as a frequent customer. The surveillance video, meanwhile, corroborated her account of the robbery. True, the video of itself was not of sufficient clarity to allow the jury to independently identify the unmasked robber as Allen, but the video's technical limitations did not undermine Smithson's account; they simply could not fully corroborate it. Meanwhile, Detective Farmer's testimony that Allen did not respond and was uncooperative when questioned about the crime, while unhelpful for Allen's defense, was both short and brief. Neither side referenced the testimony during closing arguments. *See Bieghler v. McBride*, 389 F.3d 701, 705-07 (7th Cir. 2004); *Splunge v. Parke*, 160 F.3d 369, 372-73 (7th Cir. 1998). In light of the totality of the wealth of evidence concerning the petitioner's guilt, it is evident from the record that the attorney's questions to Detective Farmer disclosing Allen's post-arrest silence did not tip the scales of justice unfairly in favor of the State. Furthermore, even if we were to hold that the attorney's cross-examination was objectively unreasonable, her representation was not ineffective because the defendant was not prejudiced by the testimony.

Nor will we draw any inference from Allen's initial mistrial, which could have been the result of a variety of

circumstances that are irrelevant to our consideration of prejudice. Although the fact of a prior mistrial might conceivably give some support to the defendant's claim that the case against him was weak, it does not, on its own, show that an error was outcome-determinative. *Compare Adams v. Bertrand*, 453 F.3d 428, 438 (7th Cir. 2006) (attorney's failure to pursue witness with exculpatory testimony was prejudicial error where evidence was "relatively thin" and codefendant who called witness received mistrial), *with Toliver v. Hulick*, 470 F.3d 1204, 1208 (7th Cir. 2006) (prior mistrial irrelevant to show prejudice from trial court's refusal to let defendant cross-examine principal witness about immigration status, where defendant confessed and witness's testimony was strong). Each trial is a distinct event with many nuances that transcripts can never fully capture; we refuse to draw any conclusions based on the mere fact that two different events produced two different results. Because the evidence of Allen's guilt is more than substantial, there is no reason to dwell on his prior mistrial.

## C.  Ineffective assistance of appellate counsel.

Finally, Allen claims that his appellate attorney was ineffective in failing to argue his *Strickland* claim. When an appellate counsel omits "a significant and obvious issue . . . [the court] will deem his performance deficient." *Mason v. Hanks*, 97 F.3d 887, 892-93 (7th Cir. 1996). And if raising the issue "may have resulted in reversal of the conviction, or an order for a new trial, [the court] will deem the lack of effective assistance prejudicial." *Id.* (internal citations and quotations omitted).

In both the Illinois appellate court as well as the district court, Allen's claim was rejected on the grounds that Allen was not prejudiced by his trial attorney's error, and thus appellate counsel could not have been ineffective in failing to raise the argument. Allen challenges this conclusion, noting that his ineffective-assistance claim should or would have been judged under a *de novo* standard of review had it been raised on direct appeal. *See People v. Bailey*, 874 N.E.2d 940, 945 (Ill. App. Ct. 2007). But on postconviction review the state appellate court explicitly rejected the state's waiver argument and evaluated the *Strickland* claim "on its merits," applying *de novo* review.

AFFIRMED.

ROVNER, *Circuit Judge*, dissenting. The right to counsel—to effective counsel—ensures a fair trial by requiring that counsel vigorously advance a defendant's claim of innocence. *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963); *Strickland*, 466 U.S. at 684-86. But here counsel not only failed to defend Darryl Allen at all stages of his trial, counsel actually *harmed* him by eliciting testimony from the arresting officer, Joseph Farmer, that Allen said nothing to defend himself after his arrest. The state ap-

pellate court held that Allen was not prejudiced by this error, and the majority agrees. Because I believe that the state appellate court unreasonably applied *Strickland* in what was essentially a one-witness case, I am compelled to dissent.

I join with the majority's holdings in section II(A) and II(C) regarding Allen's argument that the state court applied the wrong standard to his claims of ineffective assistance of trial and appellate counsel. But I part ways with the majority in section II(B), which holds that the state appellate court did not unreasonably apply *Strickland* in concluding that the evidence against Allen was "overwhelming." I conclude that the state court did unreasonably apply *Strickland* in this regard. I reach this conclusion even though I agree that the testimony of an eyewitness like Cheryl Smithson can be sufficient to affirm a conviction. *See United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 255 (7th Cir. 2003) (holding that even vulnerable eyewitness testimony can be "more than sufficient to convict"). As the majority rightly points out, Smithson observed the robber at close range, she fingered Allen without hesitation in a photographic array and at trial, and she said she had seen him before.

But the relevant issue here is not the sufficiency of evidence, but whether Smithson's testimony *over-whelmingly* supports a conviction. It does not. *See Krist v. Eli Lilly & Co.*, 897 F.2d 293, 297 (7th Cir. 1990) (noting that confidence in a memory does not necessarily support its accuracy); Elizabeth F. Loftus et al., *Eyewitness Testimony: Civil and Criminal* § 4-14 (4th ed. 2007) (noting

that a victim can confuse recent acquaintances with the perpetrator of a crime). The evidence against Allen was particularly weak: The surveillance video—the state's only physical evidence—does not corroborate Smithson's testimony that the perpetrator had entered and left the store shortly before the robbery, and the video was not clear enough to support her identification. The state's only other evidence—testimony intended to show that Allen fled the state after he committed the crime—was meager: unremarkably, Allen was found in Atlanta, where his sister lives, during the Christmas holidays.

We have repeatedly held that one eyewitness's testimony such as Smithson's was not "so overwhelming that the outcome of the trial was a foregone conclusion," *Hampton*, 347 F.3d at 255; *see Wright v. Gramley*, 125 F.3d 1038, 1043 (7th Cir. 1997) (describing as "weak" state's case relying almost exclusively on testimony of two eyewitnesses); *United States ex rel. Freeman v. Lane*, No. 89 C 4642, 1990 WL 70558 at *6 (N.D. Ill. May 14, 1990) (evidence of guilt not overwhelming where conviction was based on testimony of lone eyewitness and no physical evidence corroborated witness's testimony), *aff'd*, *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *see also Anderson v. Johnson*, 338 F.3d 382, 393-94 (5th Cir. 2003) (describing as "relatively weak" case relying on two eyewitnesses' testimony); *Towns v. Smith*, 395 F.3d 251, 260-61 (6th Cir. 2005) (describing single eyewitness's shaky identification as "scant" evidence of defendant's guilt).

With no other evidence linking Allen to the crime, and with the video surveillance not corroborating

Smithson's identification, Detective Farmer's testimony that Allen was uncooperative and did not respond to post-arrest questioning acquired undeserved importance. As the Supreme Court explained in *United States v. Hale*, 422 U.S. 171, 180 (1975), "the jury is likely to assign much more weight to the defendant's previous silence than is warranted." Allen's counsel was incompetent for eliciting this testimony because its only probable effect was to sway the jurors to find guilt. Without evidence of Allen's post-arrest silence, the jury would have had to decide whether Smithson's identification was accurate and strong enough to convict—an arduous task. But Farmer's testimony of Allen's uncooperative behavior, and his refusal to answer questions related to the case, communicated to the jury that he was conscious of his guilt—a criminal with something to hide.

Under these circumstances, it is not reasonable to describe the case against Allen as so overwhelming that there is not a reasonable probability that, but for counsel's unexplained decision to probe the arresting officer about Allen's post-arrest silence, the outcome would have been different. Indeed, on analogous facts we have concluded that *two* eyewitness identifications—one by a witness who previously knew the defendant—did not constitute evidence of such an overwhelming character that it could sustain a conviction where the prosecution had commented on the defendant's post-arrest silence. *See United States ex rel. Ross v. Fike*, 534 F.2d 731, 734 (7th Cir. 1976).

In fact, in the earlier trial in which the same evidence was presented absent the evidence of post-arrest silence

no guilty verdict was reached and the trial ended in a mistrial. Given the limited evidence of guilt in this case, it was an unreasonable application of *Strickland* to hold that the evidence was overwhelming and, therefore, that prejudice was not shown. Accordingly, I respectfully dissent.