# STATE OF CONNECTICUT *v.* JOSE RAMON HEREDIA
## (AC 33130)

Gruendel, Lavine and Foti, Js.

Argued September 14—officially released November 27, 2012

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Kevin J. Murphy*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Jose Ramon Heredia, appeals from the judgment of conviction rendered after a jury trial of intentional manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a, and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1). On appeal, the defendant claims that (1) the state failed to produce independent corroborating evidence for the defendant's inculpatory statements, and (2) the trial court committed evidentiary and constitutional error by excluding the testimony of a defense witness. We affirm the judgment of the trial court.

This appeal arises from the death of Jose "Cucho" Pagan. The jury reasonably could have found the following facts. On or about the late evening of August 4, 2006, a fight broke out at a party located in Hartford. The disturbance escalated, and eventually gunshots were fired. Several individuals, including Eric Rodriguez, pulled out their guns and fired gunshots in return. As

a result of the exchanged gunfire, Rodriguez died of a gunshot wound. Several of Rodriguez' friends, including the defendant, believed that Raul "Pookie" Robles killed Rodriguez. The defendant and several others drove to the hospital after the shooting to check on Rodriguez. Edwin Ramos, a passenger in the vehicle, testified that the passengers were distraught during the drive and that he overheard the defendant say, "we're going to get him," several times; he further testified that he believed the defendant was referring to Robles when he made these statements.

Meanwhile, Robles had contacted his mother, Josephine Almedina, claiming that he had received threatening telephone calls from individuals who believed he was involved with Rodriguez' death. Almedina advised Robles to come to her home in New Britain. Almedina lived in an apartment located on the second floor of the home, while the victim, Pagan, and his family lived in an apartment located on the first floor of the same home. Robles arrived at Almedina's home at approximately 4:30 a.m. on August 5, 2006. Shortly thereafter, Almedina and her neighbors heard banging outside followed by a vehicle alarm and saw three individuals running in the area of Almedina's home. A vehicle then passed in front of the home and gunshots were fired. Witnesses who heard the gunshots testified that they were fired from different types of guns. Robles and Almedina took cover within her home while the gunshots were fired. After the shooting subsided, Almedina and Robles went downstairs to check on Pagan and his family.

Pagan's sister called 911, and the police arrived shortly thereafter. Upon arrival, the police completed an assessment of the individuals residing in the house and could not account for Pagan. Upon further investigation, the police found Pagan in the bedroom on the floor with gunshot wounds. He was later determined

to be deceased. The subsequent police investigation revealed a total of twenty bullet strikes from two types of guns—one military type weapon and the other a semiautomatic handgun identified as a 0.9 millimeter Makarov.[1] Bullet strikes were found at the victim's residence, nearby vehicles and a neighboring residence. One of these bullet strikes penetrated the residence and struck Pagan. The next morning, several of Rodriguez' friends, including the defendant, gathered to light candles at the scene where Rodriguez was shot. An argument broke out regarding who may have been at fault for Rodriguez' death, and the defendant was overheard stating, "[d]on't worry about it because we set an example," and, "that if [Robles] would have come out when . . . they hit on the truck they would have [given] him the whole clip."

In a three count substitute information, the state charged the defendant with murder in violation of General Statutes §§ 53a-8 and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, and conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (1). The jury found the defendant not guilty of murder and conspiracy to commit murder but guilty of the lesser included offense of intentional manslaughter in the first degree with a firearm in violation of § 53a-55a and conspiracy to commit assault in the first degree as charged. The defendant then filed a motion for a judgment of acquittal, claiming that the state had proffered insufficient evidence to sustain the aforementioned conviction. The court denied the defendant's motion and sentenced him to a total effective term of fifty years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

---

[1] Multiple witnesses testified at trial that they saw the defendant in possession of a small handgun similar in appearance to the 0.9 millimeter Makarov used in the shooting.

I

The defendant first claims that his conviction must be set aside because the state failed to sufficiently corroborate his confessions with independent evidence and, thus, failed to comply with the rule of corpus delicti. Before we can address the merits of the defendant's corpus delicti claim we must first determine whether the claim is properly before us. It is undisputed that the defendant did not preserve this claim in the trial court. The defendant, however, seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or, alternatively, the plain error doctrine embodied in Practice Book § 60-5.

"In *Golding*, [our] Supreme Court set forth the conditions under which a defendant can prevail on an unpreserved claim of constitutional violation. . . . [A] defendant can prevail . . . only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of a whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citations omitted; internal quotation marks omitted.) *State* v. *McArthur*, 96 Conn. App. 155, 165, 899 A.2d 691, cert. denied, 280 Conn. 908, 907 A.2d 93 (2006).

The defendant argues that his claim invokes a constitutional right and may be reviewed by this court in a manner akin to a sufficiency of the evidence claim. In so arguing, the defendant asserts that our appellate

courts have left undecided the issue of whether a corpus delicti claim implicates a constitutional right. We disagree.

"Historically, the corpus delicti rule prohibited a defendant from being convicted of a crime on the basis of his extrajudicial confession unless the confession was corroborated by some evidence of the corpus delicti, or the body of the crime . . . . In its original form, the corpus delicti doctrine required proof from another source that a crime had in fact occurred. See *State* v. *Tillman*, 152 Conn. 15, 18, 202 A.2d 494 (1964).

"Over the last fifty years, however, the nature and extent of the corroboration requirement has evolved. Following the decision of the United States Supreme Court in *Opper* v. *United States*, 348 U.S. 84, 75 S. Ct. 158, 99 L. Ed. 101 (1954), a number of jurisdictions have abandoned the traditional rule in favor of the trustworthiness doctrine, which emphasizes the reliability of the defendant's confession rather than the availability of independent evidence of the corpus delicti. Under the trustworthiness doctrine, direct proof of the corpus delicti independent of the defendant's statements is not required as long as there is substantial independent evidence which would tend to establish the trustworthiness of the [defendant's] statement. . . . If . . . there is substantial extrinsic evidence tending to demonstrate that the statements of the accused are true, i.e., trustworthy, the statements are admissible. . . . The corpus delicti of the crime may then be established by the statements of the accused and extrinsic evidence considered together. . . . Our Supreme Court [has] adopted the trustworthiness doctrine." (Citations omitted; internal quotation marks omitted.) *State* v. *McArthur*, supra, 96 Conn. App. 164–65.

Our Supreme Court has held that corpus delicti does not implicate a fundamental constitutional right sufficient to satisfy the standard set forth in *Golding*. In

*State* v. *Uretek, Inc.*, 207 Conn. 706, 543 A.2d 709 (1988), our Supreme Court "summarily rejected a claim that the lack of extrinsic corroboration of an admission that was vital to proving an element of the offense implicated a fundamental constitutional right and, therefore, concluded that such a claim did not qualify for review . . . ." *State* v. *Oliveras*, 210 Conn. 751, 756, 557 A.2d 534 (1989); *State* v. *Uretek, Inc.*, supra, 713 (holding that the defendant's "corpus delicti claim does not implicate a fundamental constitutional right"). Although our Supreme Court in *Oliveras* retreated from the holding in *Uretek, Inc.*, by declining to decide "whether [an unpreserved] claim that there was no proof of the corpus delicti . . . would warrant review . . . as implicating a constitutional right"; *State* v. *Oliveras*, supra, 757;[2] and this court in *State* v. *McArthur*, supra, 96 Conn. App. 166, "assume[d] . . . that the defendant's [unpreserved corpus delicti] claim [was] constitutional in nature" in order reach its merits, *Uretek, Inc.*, has not been expressly overruled.[3] Moreover, our Supreme Court, in *State* v. *Beverly*, 224 Conn. 372, 618 A.2d 1335 (1993), classified corpus delicti as "a *rule of evidence*," rather than a standard implicating a fundamental constitutional right. (Emphasis added.) Id., 375. Accordingly, we conclude that the defendant has failed to show that his claim is of constitutional magnitude as required by the second *Golding* prong.

The defendant argues, in the alternative, that his claim may still be reviewed by this court under the

---

[2] Both *Oliveras* and *Uretek, Inc.*, discussed the reviewability of an unpreserved claim asserting a lack of proof of corpus delicti under the pre-*Golding* standard set forth in *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973).

[3] "It is axiomatic that the Appellate Court is bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *Thomas*, 137 Conn. App. 782, 791, 49 A.3d 1038 (2012).

plain error doctrine. We disagree. "[T]he plain error doctrine, which is now codified at Practice Book § 60-5 . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, a] defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 521–22, 923 A.2d 638 (2007).

In the present case, the state presented independent evidence to corroborate the defendant's inculpatory statements. In fact, the state presented testimony from multiple witnesses that the defendant made statements pertaining to his involvement in Pagan's death and that the defendant possessed a handgun similar to the gun used in the shooting. Accordingly, the defendant cannot prevail on his claim that the failure to grant relief will result in manifest injustice. We therefore conclude that the claim is not reviewable under the plain error doctrine.

## II

The defendant's final claim is that the court improperly excluded testimony of a defense witness. Specifically, the defendant claims that (1) the court abused its discretion by improperly excluding the evidence as inadmissible hearsay resulting in a violation of his right to present a defense under the sixth amendment to the United States constitution and (2) the testimony was admissible as extrinsic evidence of a prior inconsistent statement for impeachment purposes.[4]

The following additional facts are necessary to our resolution of this claim. Jason Ramos initially was charged as an accessory to murder and conspiracy to commit murder in connection with the death of Pagan, but he denied any involvement with the crime. Jason Ramos ultimately pleaded guilty to the lesser charge of hindering prosecution before his murder trial commenced.[5] At the defendant's trial, Jason Ramos testified on behalf of the state that he overheard the defendant make statements indicating his involvement in the shooting that resulted in Pagan's death. During his testimony, Jason Ramos denied allegations that he admitted to shooting Pagan and celebrated the fact that he had

---

[4] The defendant also claims that the court's ruling excluding Kelly's proposed testimony violated his constitutional rights of confrontation and due process. We decline to address these claims, however, because they are inadequately briefed. "It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *State* v. *Koslik*, 137 Conn. App. 855, 858–59 n.7, 49 A.3d 1067 (2012). In the present case, the defendant's appellate brief mentions these claims only once, making conclusory assertions without any legal support or analysis.

[5] Jason Ramos further testified that by pleading guilty to hindering prosecution he could receive a maximum sentence of ten years imprisonment with the right to argue for less time.

entered a plea to the much lesser charge of hindering prosecution.

The defense then made an offer of proof to present the testimony of Detective Matthew Kelly.[6] Kelly testified that he interviewed Angel Gonzalez, who was housed in the same correctional facility as Jason Ramos. Gonzalez claimed that he had information pertaining to the investigation of Pagan's murder. During the interview, Gonzalez told Kelly that he had overheard a conversation between Jason Ramos and his cellmate in which Jason Ramos stated that he got away with killing somebody. Gonzalez also told Kelly that he witnessed Jason Ramos make a shooting gesture with his hand while saying that "he beat the rap." Gonzalez, however, declined to sign a sworn, written statement recounting the interview. Kelly then interviewed Paul Raymond, another inmate housed within earshot of Jason Ramos' cell, in order to corroborate the facts provided by Gonzalez. Raymond did provide a signed statement corroborating most of Gonzalez' statements, except that Raymond stated (contrary to Gonzalez) that Jason Ramos did not admit to killing Pagan.[7]

The defendant argued that Kelly's proposed testimony, although double hearsay, should be admitted under the residual hearsay exception, as it was corroborated by Raymond. The state objected to the admission of Kelly's proposed testimony on the ground that such testimony constituted inadmissible hearsay not subject to any exception to the rule against hearsay. In conducting its analysis pursuant to the residual hearsay exception, the court found no reasonable necessity to admit

[6] The defendant sought to admit Kelly's proposed testimony solely under the residual hearsay exception and not as extrinsic evidence of a prior inconsistent statement.

[7] Raymond subsequently testified on behalf of the defense that although he witnessed Jason Ramos jumping up and down happily, saying that he beat the murder rap, Jason Ramos did not admit to shooting anyone.

Kelly's proposed testimony because Raymond's testimony was "substantially similar" to the statement Gonzalez gave to Kelly. The court further concluded that Kelly's proposed testimony lacked sufficient guarantees of trustworthiness and reliability because (1) Gonzalez refused to swear under oath and sign his statement, (2) the statement the defendant sought to admit was double hearsay[8] and (3) the corroboration offered as an indicia of reliability was also hearsay. The court sustained the state's objection and ruled that Kelly's proposed testimony was inadmissible hearsay that failed to meet the requirements of the residual hearsay exception. The defendant took no exception to the court's ruling.

The defendant first claims that the court erred in refusing to admit Kelly's proposed testimony pursuant to the residual hearsay exception.[9] In so doing, the defendant also asserts that this ruling deprived him of his sixth amendment right to present a defense. The defendant, however, failed to advance this sixth amendment argument at trial and therefore seeks review of his claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.[10] Because the defendant's constitutional rights were not violated, we conclude that the defendant cannot prevail under *Golding*.

We initially note that "[a] defendant is . . . bound by the rules of evidence in presenting a defense. . . .

[8] The court noted that Kelly's proposed testimony constituted double hearsay because "Kelly [would] be testifying as to what Angel Gonzalez said as to what Jason Ramos said."

[9] "A statement that is not admissible under any [other hearsay exception] is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." Conn. Code Evid. § 8-9.

[10] We disagree with the defendant that preservation of his constitutional claim was "implicit in his argument that the evidence was 'very, very significant.' "

Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the [federal] constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . *State* v. *Winot*, 294 Conn. 753, 775–76, 988 A.2d 188 (2010). . . . Thus [i]f the proffered evidence is not relevant [or constitutes inadmissible hearsay], the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 9–10, 1 A.3d 76 (2010); see also *State* v. *Tinsley*, 59 Conn. App. 4, 13, 755 A.2d 368 ("The defendant's rights to confront and cross-examine witnesses and to present a defense do not give him the right to have admitted any evidence he chooses. . . . In the exercise of his rights, the defendant, as well as the state, must comply with the established rules of evidence and procedure." [Internal quotation marks omitted.]), cert. denied, 254 Conn. 938, 761 A.2d 765 (2000).

With the foregoing in mind, we must next consider whether the court properly excluded the testimony. "Our standard of review for evidentiary claims is well settled. To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 298 Conn. 10–11. "A court's conclusion as to whether certain hearsay statements bear the requisite indicia of trustworthiness and reliability necessary for

admission under the residual exception to the hearsay rule is reviewed for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Myers*, 126 Conn. App. 239, 247, 11 A.3d 1100, cert. denied, 300 Conn. 923, 14 A.3d 1006 (2011). "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . Thus [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did. . . . *If, after reviewing the trial court's evidentiary rulings, we conclude that the trial court properly excluded the proffered evidence, then the defendant's constitutional claims necessarily fail.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Davis*, supra, 11.

In the present case, the court correctly considered the factors enumerated by § 8-9 of our code of evidence, first concluding that there was no reasonable necessity for the testimony, as it was substantially similar to the testimony given by another witness. The court finally concluded that the offered testimony lacked the necessary indicia of reliability because the offered testimony constituted hearsay within hearsay and was corroborated only by other hearsay statements rather than established facts. Furthermore, our Supreme Court has recognized that "[t]he residual hearsay exceptions [should be] applied in the rarest of cases, and the denial of admission under the exceptions can only be reversed for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *McClendon*, 248 Conn. 572, 585, 730 A.2d 1107 (1999). Based on the foregoing, we conclude that the court did not abuse its discretion by excluding the offered testimony as inadmissible hearsay.

Because we have concluded that the court did not abuse its discretion by excluding Kelly's proposed testimony, the defendant's constitutional claim must fail. See *State* v. *Davis*, supra, 298 Conn. 11 ("[i]f . . . we conclude that the trial court properly excluded the proffered evidence, then the defendant's constitutional claims necessarily fail"). Moreover, this court has noted that "[a hearsay challenge] is a claim of an erroneous evidentiary ruling and as such does not implicate the constitution." (Internal quotation marks omitted.) *State* v. *Tinsley*, supra, 59 Conn. App. 13. We conclude that the defendant's sixth amendment right to present a defense was not violated and therefore decline to review the defendant's claim.

Finally, the defendant seeks *Golding* review of his claim that the court erred in not admitting Kelly's proposed testimony as extrinsic evidence of a prior inconsistent statement to impeach Jason Ramos' testimony. Specifically, the defendant asserts that the exclusion of Kelly's proposed testimony violated his sixth amendment right to present a defense. We disagree. The defendant is asserting an entirely new claim of error, which the court had no opportunity to address at trial. In the present case, the defendant sought to admit Kelly's proposed testimony *solely* for its substance pursuant to the residual hearsay exception, and when the court concluded that the proffered testimony constituted inadmissible hearsay the defendant raised no other arguments or objections.[11] It is well settled that

---

[11] "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act."

"[a]ssigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn. 514, 531, 881 A.2d 247 (2005). Furthermore, we are not persuaded by the defendant's attempt to classify this unpreserved evidentiary claim as constitutional in nature. This court has held that "[t]he defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim . . . . [O]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." (Internal quotation marks omitted.) *State* v. *Robinson*, 129 Conn. App. 331, 336–37, 19 A.3d 259 (2011). We decline to review the defendant's claim, concluding that it fails to rise to the level of constitutional magnitude required by the second *Golding* prong.

The judgment is affirmed.

In this opinion the other judges concurred.

(Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 408 n.18, 902 A.2d 1044 (2006).