******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

STATE OF CONNECTICUT *v.* ANGEL RIVERA
(AC 40233)

DiPentima, C. J., and Sheldon and Devlin, Js.

*Syllabus*

Convicted, after a jury trial, of capital felony and conspiracy to commit murder arising out of the shooting deaths of two victims, the defendant appealed. At trial, the trial court declined to admit into evidence certain statements that the defendant's coconspirator, M, had made in a telephone conversation with his girlfriend in the presence of police officers following M's arrest on unrelated charges, during which M stated that he had shot both victims. Because M did not testify at trial, the defense sought to offer his statements through a police report. The trial court determined that the portion of a police report containing M's statements was not admissible. *Held* that the trial court did not abuse its discretion in declining to admit M's statements under the residual exception to the hearsay rule and concluding that the statements lacked the trustworthiness and reliability that are required for admission under that exception: that court properly noted that multiple levels of hearsay involved in M's statements undermined their reliability, as defense counsel sought to admit the statements through the testimony of one officer concerning what another officer wrote in a report about what he had overheard M say to his girlfriend during the phone call, and there was nothing in the record about the circumstances under which the police officers overheard the phone call; moreover, even if the exclusion of M's statements was improper, the defendant failed to demonstrate that any error was harmful, as M's statements, which were offered to demonstrate that the defendant did not commit the crime, did not expressly exclude the defendant as either an additional shooter or nonshooting participant in the crime, the evidence at trial strongly implicated the defendant as a participant and included eyewitness accounts and physical evidence, and, thus, the exclusion of M's statements did not substantially affect the verdict.

Argued January 8—officially released April 17, 2018

*Procedural History*

Substitute information charging the defendant with two counts of the crime of murder, and with the crimes of capital felony and conspiracy to commit murder, brought to the Superior Court in the judicial district of Hartford and tried to the jury before the court, *Dewey, J.*; verdict of guilty; thereafter, the court vacated and dismissed the murder counts; judgment of guilty of capital felony and conspiracy to commit murder, from which the defendant appealed. *Affirmed.*

*Jennifer B. Smith*, for the appellant (defendant).

*Nancy L. Walker*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *John F. Fahey*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DEVLIN, J. The defendant, Angel Rivera, appeals[1] from the judgment of conviction, rendered following a jury trial, of capital felony, in violation of General Statutes (Rev. to 2011) §§ 53a-54b (7) and 53a-8 (a), and conspiracy to commit murder, in violation of General Statutes (Rev. to 2011) §§ 53a-54a (a) and 53a-48 (a).[2] On appeal, the defendant claims that the trial court abused its discretion by declining to admit certain oral statements under the residual exception to the hearsay rule. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 3 a.m. on January 1, 2011, Yolanda Diaz was out with some friends in Hartford. As she emerged from a limousine near Park Street, another car pulled up and the defendant and his friend, Jose Medina, also known as "Fat Boy," got out. The defendant asked Diaz if she knew where he could find Lionel Roldan, her former boyfriend. The defendant then slapped Diaz. Diaz noticed that the defendant's face was red, bloody and scratched, as if he had been in a fight. After the defendant slapped her, Diaz ran back to the limousine and called Roldan's mother because she was concerned that Roldan was in danger. Diaz knew that, during the previous two months, Roldan had been getting threatening phone calls from the defendant and "Fat Boy." She also knew that Roldan had a gun like a "cowboy's gun."

At some point between 3:30 and 4 a.m., Roldan and his cousin, Luis Rivera,[3] picked up Luis' wife, Carmen Pena, and her fourteen year old daughter, Irasema Sanchez, from the home of Pena's sister on Babcock Street in Hartford. Luis was driving his red Ford Expedition and Roldan was sitting in the front passenger seat. As Pena and Sanchez got into the Expedition, Sanchez noticed that Luis' hand was swollen. Luis explained that "he had a problem with the [defendant]."

Upon arrival at Pena's home on New Park Avenue in Hartford, a black Lexus automobile pulled up behind the Expedition. David Pabon previously had loaned his black Lexus automobile to the defendant. The defendant got out of the Lexus and walked toward the Expedition with a gun in his hand. When Sanchez alerted Luis that the defendant was approaching, Luis told Sanchez not to get out of the car. Pena told Luis to drive away. Luis then drove away with Roldan, Pena and Sanchez still in the Expedition. The defendant, driving the Lexus, followed the Expedition as it drove away. When they got to Francis Avenue, the defendant passed the Expedition and stopped. Luis then stopped as well. The defendant and Medina exited the Lexus and ran toward the Expedition, shooting at that vehicle.[4] Luis tried to move the Expedition but it became stuck in the snow. According to Pena, Luis had been hit at this point.

As the defendant and Medina approached the Expedition, Pena and Sanchez exited the Expedition and hid behind the driver's side back tire. When the defendant and Medina reached the passenger side of the Expedition, the defendant began beating Roldan and Medina took Roldan's gun. Luis got out of the Expedition, walked a few steps and collapsed. Pena grabbed the defendant by the shoulders and asked him "why [he was] doing that." Medina pointed a gun at Pena's forehead and told Sanchez that if she "didn't take [her] mom to the other side of the truck he was going to shoot her right there." Pena then released the defendant and she and Sanchez ran to Luis.

The defendant and Medina left the scene of the shooting in the Lexus, but returned shortly thereafter and parked near the Expedition. They both pulled Roldan, who was almost dead, out of the Expedition and left him in the street. Medina then drove away in the Expedition and the defendant drove away in the Lexus.

At approximately 4:15 a.m. on January 1, 2011, Steven Barone, a Hartford police officer, responded to a report of a shooting on Francis Avenue. Upon arrival, he observed "two victims in the street, both suffering from apparent gunshot wounds." Barone called for medical personnel, who determined that Luis was dead. Roldan was transported to Hartford Hospital, where he died. The police recovered four nine millimeter shell casings and one fired bullet on Francis Avenue. No firearms were located at the scene. Once at the police station, Pena and Sanchez each gave statements. They also independently viewed photographic arrays and identified the defendant and Medina as the men who had attacked them on Francis Avenue. Prior to the night in question, Sanchez had known the defendant "in passing" for two and one-half years.

Later on January 1, 2011, Andrew Jacobson, a detective with the Major Crimes Division of the Hartford Police Department, learned that the Ford Expedition had been located in New Britain. He went to see the vehicle and observed that "[t]he front passenger window was damaged. It was pretty much missing. It looked like it had been shattered. And there was a defect on the . . . outside of the front passenger door that is consistent with maybe a gunshot." Jacobson also saw some blood inside the vehicle and noticed a strong odor of gasoline. He arranged to have the vehicle towed to the police station while he secured a warrant to search the vehicle. The police recovered another nine millimeter shell casing on the floor of the Expedition below the driver's seat.

A few days later, police found the Lexus at the home of Alejandro Falcon, the defendant's friend. Falcon had found a bullet fragment in the rear passenger door, which he gave to Jacobson. The Lexus was swabbed

for DNA. The results of subsequent DNA testing were consistent with the defendant's being the source of the DNA found on the steering wheel. The defendant also could not be eliminated as a contributor to the DNA mixtures found on both the driver's interior door handle and the gearshift of the Lexus.[5]

Medina was arrested later on January 1, 2011, on unrelated charges following a car chase. By January 17, 2011, the police had secured an arrest warrant for the defendant, who turned himself in to the police. He gave a statement to Jacobson in which he denied involvement in the shooting. According to the statement, the defendant went to a club in Hartford at approximately 1 a.m. on January 1, 2011. At approximately 3 to 3:30 a.m., after he had left the club and was outside, he got into a fight with "a guy I know as Luis or Tiko." The defendant stated that, after the fight, he returned to his mother's house, where he stayed until 7 or 8 a.m. He stated that he "first heard about Tiko and another guy being shot and killed on the news" and that "a guy I know as Fat Boy got in a car chase and was later arrested for . . . Tiko's murder." The defendant also stated that he used to own a black Lexus but previously had sold it to a man named "G."

Following a jury trial, the defendant was convicted of capital felony, in violation of §§ 53a-54b (7) and 53a-8 (a), two counts of murder, in violation of §§ 53a-54a (a) and 53a-8 (a), and conspiracy to commit murder, in violation of §§ 53a-48 (a) and 53a-54a (a). The court vacated and dismissed the two counts of murder and sentenced the defendant to life in prison without parole on the charge of capital felony, followed by an additional ten years on the charge of conspiracy to commit murder. The defendant then filed the present appeal. Additional facts will be set forth as necessary.

The defendant argues that the trial court abused its discretion in declining to admit Medina's oral statements under the residual exception to the hearsay rule. The state counters that the court properly exercised its discretion in declining to admit the statements under the residual exception to the hearsay rule. The state further argues that, even if the statements were admissible, the defendant failed to prove harm. We agree with the state.

The following additional facts are necessary for the resolution of this claim. At trial, the state called Jacobson as a witness. During cross-examination, defense counsel inquired whether Jacobson had used statements given by both the defendant and Medina in the application for the defendant's arrest warrant. As to any statements from Medina, the state objected on hearsay grounds. Defense counsel argued that the statements were admissible under the coconspirator exception to the hearsay rule. Outside the presence of the jury, defense counsel read into the record the proffered state-

ments that were contained in a police report authored by Officer R. Kevin Salkeld dated January 1, 2011. As read into the record, the report stated: "Later in the evening of January 1st of 2011, I was in Hartford Police Major Crimes and spoke to Jose Medina. . . . Medina repeatedly stated he just wanted to speak to his girlfriend. If he spoke to his girlfriend, he would tell us everything that happened that night. At approximately 21:01 hours, Detective Poma got in touch with Medina's girlfriend and asked if she would talk to him. I observed Medina pick up the phone with a big smile on his face. He told his girlfriend he was about to do twenty years in prison. He told [her] to watch the news he had gotten in a high speed chase with the police. He was smiling and told her it was the most fun he had ever had and he . . . again told her he was going to do twenty years. . . .

"He stated, 'Because I fucking killed Paulo and Lionel. He paused to state that, 'They deserved it for punching me in the face. See babe, that is what he gets for punching me and trying to rob me. I am going to do twenty years for shooting those two fuckers. Wait for me baby. I'll be out in twenty years. . . . I love you babe and I am going to do fifteen to twenty years and those fuckers deserved it. No one punches me. I shot those motherfuckers.' "

The trial court ruled that this portion of Salkeld's report containing Medina's statements was not admissible under the coconspirator exception because it was not made in furtherance of the conspiracy and was offered in a form involving multiple levels of hearsay.[6] Later that day, the court sua sponte raised the question of whether Medina's statements were admissible under the residual exception to the hearsay rule. In rejecting its admissibility under the residual exception, the court stated: "The trouble is reliability. It is so far removed. It's basically, the def—not even the defendant, 'A' told an unknown in this, was overheard by 'B,' was relayed by 'C' to 'D,' who told this witness. More than multiple levels of hearsay, it's the reliability of the original; Medina told someone on the phone. There's no indication that the circumstances of the statement were reliable."

We initially set forth the applicable standard of review. "A court's conclusion as to whether certain hearsay statements bear the requisite indicia of trustworthiness and reliability necessary for admission under the residual exception to the hearsay rule is reviewed for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Myers*, 126 Conn. App. 239, 247, 11 A.3d 1100, cert. denied, 300 Conn. 923, 14 A.3d 1006 (2011). In reviewing for an abuse of discretion, we make "every reasonable presumption in favor of upholding the trial court's ruling." *State* v. *Bennett*, 324 Conn. 744, 761–62, 155 A.3d 188 (2017); accord *State*

v. *Heredia* 139 Conn. App. 319, 331, 55 A.3d 598 (2012), cert. denied, 307 Conn. 952, 58 A.3d 975 (2013).

"The legal principles guiding the exercise of the trial court's discretion regarding the admission of hearsay evidence under the residual exception are well established. An [out-of-court] statement is hearsay when it is offered to establish the truth of the matters contained therein. . . . As a general rule, hearsay evidence is not admissible unless it falls under one of several well established exceptions. . . . The purpose behind the hearsay rule is to effectuate the policy of requiring that testimony be given in open court, under oath, and subject to cross-examination. . . . The residual, or catch-all, exception to the hearsay rule allows a trial court to admit hearsay evidence not admissible under any of the established exceptions if: (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions. . . . We have recognized that [t]he residual hearsay exceptions [should be] applied in the rarest of cases . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Bennett*, supra, 324 Conn. 762.

According to the defendant, there was a reasonable necessity for the admission of Medina's statements because Medina had a fifth and fourteenth amendment privilege against self-incrimination, rendering him unavailable to testify.[7] The defendant also contends that Medina's statements were reliable and trustworthy. Specifically, he argues that Medina's statements were made in the presence of several police officers and were recorded by a police officer in an official report. He points out that the statements were made to his girlfriend, a person with whom he purportedly had a close relationship, just hours after the shooting at a time when he was not under arrest for the murders of Luis and Roldan. The defendant also argues that the statements were highly inculpatory, in that Medina admitted to killing both victims. We disagree.

Jacobson testified that when he went to talk to Medina at the Hartford Police Department about the murders, "he acted very erratically" and "his demeanor and his reactions to different questions varied wildly from crying to laughing to being serious." When Jacobson talked to him about two people dying, Medina removed his shoes and socks and started to pick lint out of his toes. On the basis of his training and experience, Jacobson concluded that Medina was under the influence of some type of drug and decided not to take a statement from him. Further, these statements do not exclude the defendant as being a participant in the incident.

The court properly noted that the multiple levels of hearsay involved in the statements undermined its relia-

bility.[8] Specifically, defense counsel sought to question Jacobson regarding a police report authored by Salkeld about what Salkeld overheard Medina tell his girlfriend.[9] See *State* v. *Heredia*, supra, 139 Conn. App. 331 (no abuse of discretion in excluding offered testimony that "constituted hearsay within hearsay and was corroborated only by other hearsay statements rather than established facts"). More significantly, however, there is nothing in the record about the circumstances under which the police officers overheard the phone call.

The residual hearsay exception is designed to permit the admission of hearsay evidence that is supported by "equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." Conn. Code Evid. § 8-9 (2). On the basis of our review of the record, we cannot say that the trial court abused its discretion in concluding that Medina's statements lacked the trustworthiness and reliability that are required for admission under the residual hearsay exception.[10]

Finally, even if the exclusion of Medina's statements was improper, such error would be harmless. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . [Our] determination [of whether] the defendant was harmed by the trial court's . . . [evidentiary ruling] is guided by the various factors that we have articulated as relevant [to] the inquiry of evidentiary harmlessness . . . such as the importance of the . . . testimony in [to the defense], whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony . . . on material points . . . and, of course, the overall strength of the state's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 311 Conn. 80, 89, 83 A.3d 595 (2014).

In the present case, the purpose of the offered statements was not to show that Medina committed the crime, but rather that the defendant did not commit the crime. In that regard, the statements do not expressly exclude the defendant as a participant. Medina's statements are consistent with the defendant being an additional shooter along with Medina as well as being a nonshooting accessory. Moreover, the evidence at trial strongly implicated the defendant. Approximately thirty minutes before the shootings, the defendant and Medina approached Diaz looking for Roldan. The defendant's face was red, bloody and scratched. Diaz knew that, during the previous two months, Roldan had received threatening phone calls from the defendant and Medina.

Upon entering the Expedition, Sanchez noticed that Luis' hand was swollen and he explained that he had had a problem with the defendant. When Luis, Roldan, Sanchez and Pena reached Pena's home, Pena saw a black Lexus pull up behind them. The defendant then got out of the Lexus holding a gun. After Luis drove away a chase ensued. On Francis Avenue, after the Expedition became stuck in the snow, Sanchez and Pena both testified that they saw the defendant and Medina run to the Expedition.

In her statement to the police, Sanchez stated that the defendant and Medina both had guns out and started shooting six or seven times.[11] Pena and Sanchez independently viewed photographic arrays and identified the defendant and Medina as the men who attacked them. Sanchez had known the defendant in passing for two and one-half years. A few days after the crime, the police found the Lexus. It had a bullet fragment in the rear passenger door. The owner of the Lexus testified that he had loaned the car to the defendant a week earlier. DNA results were consistent with the defendant being the source of the DNA on the steering wheel and he could not be eliminated as a contributor to the DNA mixtures from the driver's interior door handle and gearshift of the Lexus.

On the basis of our review of this record, we have a fair assurance that the exclusion of Medina's statements did not substantially affect the verdict. The defendant, therefore, has failed to demonstrate that any error was harmful.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant originally appealed to our Supreme Court pursuant to General Statutes § 51-199 (b) (3). Thereafter, our Supreme Court transferred the appeal to this court pursuant to § 51-199 (c) and Practice Book § 65-1.

[2] Hereinafter, all references to §§ 53a-54b and 53a-54a are to the 2011 revision of the statutes.

[3] Luis Rivera is not related to the defendant. To avoid confusion, we will refer to Luis Rivera as "Luis" in this opinion.

[4] Sanchez testified that she was not sure if the defendant had a gun at this time. In her statement to the police made on January 1, 2011, however, she stated that the defendant and Medina both had guns out and both started shooting right away, shooting six or seven times. Pena testified that the defendant was holding a gun when he approached the Expedition on New Park Avenue. The state stipulated, however, that Pena gave written statements to the police on January 1, 2011, and January 25, 2011, and said nothing in either statement about the defendant having a gun.

[5] Luis, Roldan and Medina were eliminated as contributors to the DNA mixture collected from the driver's interior door handle. Luis and Medina were eliminated as contributors to the DNA mixture found on the gearshift. The defendant and Roldan could not be eliminated as contributors to the DNA mixture collected from the gearshift.

[6] The defendant does not challenge the ruling that the statements were inadmissible under the coconspirator exception.

[7] In holding that Medina's statements were unreliable, the trial court did not consider whether there was a reasonable necessity for the admission of the statements. It is undisputed, however, that Medina, whose case was pending on appeal, was not available to testify because he had asserted a fifth amendment privilege.

[8] "Hearsay within hearsay is admissible only if each part of the combined

statements is independently admissible under a hearsay exception." Conn. Code Evid. § 8-7.

[9] The defendant urges this court to take judicial notice of Jacobson's testimony from Medina's trial, in which Jacobson testified that he was present when Medina called his girlfriend. According to the defendant, this testimony would establish that there was only one level of hearsay, as Jacobson overheard Medina's phone call with his girlfriend. The defendant, however, has cited no authority indicating why judicial notice is appropriate under these circumstances.

[10] We note that, in response to a question raised at oral argument, the defendant filed a letter, pursuant to Practice Book § 67-10, indicating that this court can consider, sua sponte, whether Medina's statements were admissible under the business record exception or the statement against penal interest exception to the hearsay rule. We decline to consider whether Medina's statements were admissible under these exceptions as these grounds were not raised in the trial court. Review of the admissibility of the statements on these grounds would be contrary to the established standard of review of evidentiary claims. See *State* v. *Miranda*, 327 Conn. 451, 464–65, 174 A.3d 770 (2018) ("This court is not bound to consider claims of law not made at the trial. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." [Citations omitted; emphasis omitted; internal quotation marks omitted.]).

[11] A redacted portion of this statement was admitted into evidence pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

———————————————