THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERMINO CLAMUEXTLE, Defendant-Appellant.

Second District   No. 2—91—1401

Opinion filed January 6, 1994.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Mary F. Rooney, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Following a jury trial in the circuit court of Du Page County, the defendant, Ermino Clamuextle, was found guilty of aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4 (now codified, as amended, at 720 ILCS 5/12—4 (West 1992)) against Angelica Lopez and sentenced to three years' imprisonment. On appeal, the defendant contends that: (1) he was deprived of the effective assistance of counsel when his attorney failed to seek a continuance during trial in order to secure the presence of an alibi witness; and (2) the trial court erred in preventing him from cross-examining Lopez about whether she was an illegal alien. We reverse and remand for a new trial.

The facts of this case are as follows. Angelica Lopez testified that at 10:30 p.m. on August 1, 1991, she exited her second-floor apartment and began walking down the stairs. When Lopez reached the bottom of the stairs, she saw the defendant, who was wearing a black T-shirt and blue pants. Lopez recognized the defendant as a person who used to live in her building. He said hello and then moved very close to her. Lopez screamed and the defendant stabbed her in the stomach. Lopez attempted to hit the defendant with a jug of water she was carrying, and he pushed her against a door and stabbed her in the left shoulder. The defendant then ran up the stairs and out the back door of the apartment building.

One of Lopez's roommates, Misael Gorostieta, came out of their apartment and saw her at the bottom of the stairs. Misael helped Lopez back to their apartment, where she lay down until the police arrived. Misael testified that Lopez told him that "Ermino" was the person who had hurt her. Lopez testified that she told one of the officers that "Ermino" had stabbed her. Lopez was subsequently

taken to the Loyola Hospital. The following day police officers came to the hospital and showed her photographs of six different persons, including the defendant. Lopez identified the defendant as the person who had attacked her.

Officer James Sherry testified that he was dispatched to Lopez's apartment shortly after 10:30 p.m. on August 1. He observed Lopez lying on the couch, and she "appeared to be bleeding." He was able to speak to Lopez through a friend of hers who acted as an interpreter. Sherry was informed that the stabbing occurred in the building's parking lot and that the attacker was a Caucasian male.

Officer Benjamin Defilippis was also dispatched to Lopez's apartment on August 1. Defilippis testified that he already had the name of the defendant as a possible suspect when he arrived at the scene. However, when Defilippis talked to Lopez's four roommates, none of them could identify the attacker. Defilippis directed the officers at the apartment to search the area, including the parking lot, for possible weapons. No weapon was recovered. Defilippis testified that although he was informed that the stabbing occurred at the bottom of the stairs leading to the outside door, he had ordered a search of the parking lot because Lopez had not been sure where the assailant had fled. Defilippis also testified that there was no blood either on the steps or on the landing at the bottom of the steps. There was blood on Lopez's apartment doorknob.

Police officers transported the defendant to the police station at approximately 11 p.m. on August 1. Defilippis met with the defendant at the police station some time between 11 p.m. and midnight. The defendant was wearing a white T-shirt and black pants. Defilippis noticed bloodstains on the defendant's pants "in the crotch area." He asked the defendant to give him the pants and they were sent to the crime lab for analysis. Four of the bloodstains were tested. Three of the stains were consistent with the defendant's blood type but *inconsistent* with the blood type of the victim, Lopez. No results were obtained from the fourth bloodstain.

Defilippis testified that the defendant consented to a search of his automobile and apartment. However, the searches turned up no evidence that he was involved in the stabbing. The defendant agreed to let the police take his photograph, and he was then allowed to leave the police station. On August 2, Defilippis and another officer visited Lopez in the hospital and showed her a photographic lineup which included the picture of the defendant. Lopez

identified the defendant's photograph as being that of her assailant, and the defendant was subsequently arrested.

Doctor Richard Gamelli testified that Lopez had suffered two stab wounds, one in her lower right abdomen which penetrated into the abdominal cavity and one in the left side of her back. As a result of the abdominal wound, Lopez suffered some internal bleeding. Doctor Gamelli testified that there was probably at least a small amount of external bleeding as well, although that may not have occurred immediately upon being stabbed.

Marcella Hernandez testified for the defense as an alibi witness. Hernandez and her husband, Maximino Gorostieta, shared an apartment with the defendant. Since her husband did not have a driver's license, Hernandez relied on the defendant for transportation to and from her job at a Red Lobster restaurant in Downers Grove. On August 1, she was scheduled to finish work at 10:30 p.m. At 10:35 p.m. on that date, she saw the defendant, who was wearing a white T-shirt and black pants, come into the restaurant and walk over toward some telephones. While still at the restaurant, Hernandez spoke to her husband on the telephone. He told Hernandez that the police were at their apartment and they were looking for the defendant. Hernandez told this to the defendant, who said that he did not have a problem with the police. Hernandez punched out at 11:01 p.m. and she and the defendant went directly to their apartment.

On cross-examination, Hernandez admitted that she did not get along with Lopez. Hernandez testified that her husband had supposedly fathered a child by Lopez while Hernandez was living in Mexico. Hernandez stated that the affair between Lopez and her husband had taken place "while I had my back turned."

Following Hernandez's testimony, defense counsel informed the court that the final defense witness had failed to appear pursuant to a subpoena. The court stated it would allow the State to proceed with its rebuttal evidence but that the defense would be allowed to reopen its case when the witness appeared.

In rebuttal, the State first called Officer Defilippis, who stated that he had made a test drive from Lopez's apartment building to the Red Lobster restaurant in Downers Grove. The drive took approximately nine minutes from the apartment to the restaurant, and seven minutes for the return trip. Defilippis testified that he had driven this route at 2 a.m. and that there would probably be more traffic along the route at 10:30 p.m.

The State then called Lopez. Lopez testified that she had a sexual relationship with Marcella Hernandez's husband while Hernandez was living in Mexico. Lopez stated that Hernandez's husband was the father of her baby. Following Lopez's testimony, the State rested and defense counsel determined that the subpoenaed witness, Wendy Shanaberger, still had not arrived. However, defense counsel rested without seeking a continuance to locate Shanaberger. The jury subsequently found the defendant guilty of aggravated battery.

The defendant filed a post-trial motion for judgment notwithstanding the verdict or, alternatively, a new trial. One ground asserted in the post-trial motion was that the trial court had erred by granting the State's motion *in limine* barring the defendant from questioning Lopez concerning her possession of fraudulent social security and immigration cards. The defendant argued that he should have been allowed to question Lopez about her possession of those cards in order to show that her testimony as a prosecution witness was potentially motivated by an attempt to curry favor with the government in order to avoid deportation. However, the court ruled that Lopez's possession of fraudulent social security and immigration cards was collateral to the main issues in the case and that testimony about those cards would confuse the jury.

Another ground set forth in the post-trial motion was that defense counsel had been ineffective for failing to seek a continuance when one of his witnesses, Wendy Shanaberger, did not appear pursuant to a subpoena. Attached to the motion was an affidavit from Shanaberger, a waitress at the Red Lobster restaurant where Marcella Hernandez also worked. Shanaberger stated in the affidavit that she had been subpoenaed to appear at trial on October 31, but that she had informed defense counsel that she could not appear until November 1. However, Shanaberger had mistakenly thought that she was not supposed to be in court until 1:30 p.m. on November 1, and she learned that she was supposed to have appeared in the morning only after the case had gone to the jury for deliberation. Shanaberger further stated that she would have testified that she had seen the defendant at the restaurant at approximately 10:20 p.m. on August 1, at which time they engaged in a brief conversation. Approximately 10 to 15 minutes later, she observed the defendant in the telephone area in the lobby of the restaurant.

In the post-trial motion, defense counsel stated that he would have sought a short continuance if he had known that Shanaberger was mistaken about what time she was supposed to appear in court. At the hearing on the post-trial motion, defense counsel also stated

that, even without Shanaberger's testimony, he had thought that the State failed to prove its case beyond a reasonable doubt. The trial court determined that defense counsel's decision not to seek a continuance was trial strategy. The court denied the defendant's post-trial motion and sentenced him to three years' imprisonment. The defendant filed this timely appeal.

■ We first address the defendant's argument that he was denied the effective assistance of counsel when his attorney rested without seeking a continuance to locate Shanaberger. In order to succeed on a claim of ineffective assistance of counsel, the defendant must show that his counsel's representation fell below an objective standard of reasonableness and deprived him of a trial " 'whose result is reliable.' " (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) The defendant must also demonstrate sufficient prejudice that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Albanese*, 104 Ill. 2d at 525, quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

The State contends that the trial court was correct in determining that the defense counsel's decision not to seek a continuance in order to find Shanaberger was a tactical decision which cannot support a claim of ineffective assistance of counsel. (*People v. Greer* (1980), 79 Ill. 2d 103, 122.) However, we do not agree that defense counsel's action falls within the category of an unreviewable tactical decision.

The theory of defense at trial was that the defendant could not have stabbed Angelica Lopez in her apartment building at 10:30 p.m. on August 1 because at that time he was either en route to or already present at a Red Lobster restaurant. Marcella Hernandez was the only witness to testify at trial about the defendant's presence in the restaurant. Hernandez stated that she first saw the defendant there at 10:35 p.m. However, Hernandez's credibility was damaged when she admitted on cross-examination that she did not get along with Lopez because Lopez allegedly had an affair with her husband.

Shanaberger's testimony that she spoke with the defendant at the restaurant at 10:20 p.m. on August 1 and saw him by the

phones 15 minutes later would have corroborated Hernandez's testimony and bolstered the defendant's alibi defense. Defense counsel stated in the post-trial motion, though, that the reason he did not seek a continuance in order to locate Shanaberger was because he did not know why she had failed to appear. However, counsel did not need this information in order to request a continuance. A motion for continuance during trial may be granted to either side in the interests of justice. (Ill. Rev. Stat. 1991, ch. 38, par. 114—4(f) (now 725 ILCS 5/114—4(f) (West 1992)).) A motion for a continuance sought to secure the presence of a witness should be granted where: (1) the defendant was diligent in attempting to secure the witness for trial; (2) the defendant shows that the testimony was material and might affect the jury's verdict; and (3) the failure to grant the continuance would prejudice the defendant. (See *People v. Ward* (1992), 154 Ill. 2d 272, 307.) All three factors were met in this case, yet defense counsel mistakenly believed that he did not have sufficient information to request a continuance. Defense counsel's failure to seek the continuance in order to locate a material witness did not constitute trial strategy but was instead an objectively unreasonable error.

Furthermore, there is a reasonable probability that, but for defense counsel's error, the result of the trial would have been different. This is not a case where the evidence against the defendant was overwhelming. The record indicates that Lopez initially identified her assailant as a Caucasian male who was wearing a black T-shirt and blue pants. However, the defendant is a Hispanic male who was wearing a white T-shirt and black pants when he arrived at the police station one-half hour after the crime. Although there was blood on the defendant's pants, a forensic chemist determined that three of the four bloodstains which she tested were inconsistent with the blood type of the victim, Lopez. The chemist was unable to obtain any test results from the fourth bloodstain. No weapon was found, and no physical evidence linked the defendant to the crime.

The case therefore hinged on whether a jury would either believe Lopez's testimony that the defendant was the assailant, or Hernandez's testimony that at the time of the stabbing the defendant was at the restaurant in order to give her a ride home. Since Hernandez's credibility had been damaged, Shanaberger's testimony that she, too, saw the defendant at the restaurant was the key evidence in support of the alibi defense. Defense counsel should have sought a continuance and introduced Shanaberger's testimony so

that the jury could review it along with all of the other evidence presented. We believe that the failure to seek a continuance in order to locate Shanaberger renders the result of the proceeding unreliable under the standard enunciated in *Strickland*. See also *People v. Butcher* (1992), 240 Ill. App. 3d 507 (given the closeness of the case, in which the evidence of guilt was not overwhelming, trial counsel's failure to secure the testimony of two persons who could corroborate and buttress a witness' testimony that the defendant was not one of the assailants constituted ineffective assistance of counsel); *People v. Skinner* (1991), 220 Ill. App. 3d 479, 485 (the failure to call witnesses who would support an otherwise uncorroborated defense constituted ineffective assistance of counsel).

The State argues, though, that a claim of ineffective assistance of counsel must be evaluated in light of the totality of the evidence. (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.) The State contends that under such an analysis defense counsel's *isolated* error of failing to seek a continuance to secure Shanaberger's testimony at trial cannot constitute ineffective assistance. We do not agree. Whether a single error is so egregious that it gives rise to a claim of ineffective assistance of counsel depends upon the facts of the particular case. In this case, the only evidence in support of the defendant's alibi defense came from Hernandez, who shared an apartment with the defendant and who also admitted that she did not like Lopez. Shanaberger had no such obvious reasons to testify in favor of the defendant. Her testimony in support of the defendant was thus so important to the defendant's alibi defense that his counsel's error in not seeking a continuance to locate her undermines confidence in the outcome of the proceeding. We therefore reverse and remand for a new trial.

■ Finally, we address an issue which may reemerge during such further proceedings. The defendant argues that the trial court erred in granting the State's motion *in limine* barring him from questioning Lopez about her residency status. The State concedes that Lopez is an illegal alien, but argues that such information is irrelevant in this case. However, in *People v. Austin* (1984), 123 Ill. App. 3d 788, 797, we stated that an illegal alien might be vulnerable to real or imagined pressure from the authorities, even though no deportation proceedings have actually been brought. We analogized the situation of an illegal alien testifying for the State to a prosecution witness who is on probation. In both cases, the witness might attempt to curry favor with the government by testifying for the State. (*Austin*, 123 Ill. App. 3d at 796-97.) We held that a

defendant is entitled to present to the jury the residency status of the State's witnesses if these witnesses were in fact illegal aliens. (*Austin*, 123 Ill. App. 3d at 797.) In this case, since Lopez is an illegal alien, the trial court erred by barring the defendant from presenting to the jury her residency status. On remand, the court should allow the defendant to question Lopez about her status as an illegal alien.

For the foregoing reasons, we reverse the decision of the trial court and remand this cause for a new trial.

Reversed and remanded.

McLAREN and DOYLE, JJ., concur.