******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRESCOTT, J., concurring in part and dissenting in part. I agree with part II of the majority opinion and, on the basis of the well reasoned analysis set forth therein, concur that the trial court properly dismissed the petition of the petitioner, Ricardo Myers, for a new trial. I also agree with the majority's conclusion in part I B of the opinion that the habeas court properly denied his actual innocence claim.

I do not, however, agree with the majority's conclusion in part I A of the opinion that the habeas court properly determined that the petitioner failed to demonstrate that his trial counsel provided ineffective assistance of counsel. In my view, the habeas court improperly concluded that the petitioner failed to demonstrate that his trial counsel's performance was deficient and that he suffered prejudice from any alleged deficient performance. I additionally conclude that the habeas court abused its discretion by denying the petitioner's requests for the issuance of a capias warrant and for a continuance. Thus, I would reverse the habeas court's denial of the petitioner's request for the issuance of a capias warrant and remand the case to the habeas court with direction to grant the petitioner's request and to conduct a new trial on the issue of prejudice. Accordingly, I respectfully dissent.

To start, I agree with the majority that the habeas court properly denied the petitioner's claim of actual innocence. As the majority persuasively explained, the petitioner was required to meet the extremely high burden of establishing that, "after considering all of th[e] evidence [adduced at the original criminal trial and the habeas trial] and the inferences drawn therefrom . . . *no reasonable fact finder* would find the petitioner guilty of the crime" for which he was convicted. (Emphasis added.) *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997). In the present case, even if Latrell Rountree had testified at trial that Gary Pope, as opposed to the petitioner, had shot Tirrell Drew, Dwight Crooks testified on behalf of the state that the *petitioner* had shot Drew. See *State* v. *Myers*, 178 Conn. App. 102, 104, 174 A.3d 197 (2017). Thus, even if Rountree's testimony was exculpatory with respect to the issue of the identity of the shooter, the state presented conflicting evidence as to that issue, and the jury reasonably could have discredited Rountree's testimony in favor of the testimony of Crooks. The petitioner thus failed to establish that "no reasonable fact finder" would have concluded that he shot Drew. See *Miller* v. *Commissioner of Correction*, supra, 747.

I next turn to the petitioner's claim of ineffective assistance of trial counsel. The facts and procedural

history are well articulated by the majority, and I do not disagree with the habeas court's factual findings or the majority's recitation thereof. It is important to emphasize, however, the relevant facts that put in context the importance of Rountree's testimony to the petitioner's case in the underlying criminal trial. As the majority explained, after the petitioner, Crooks, and Pope exited the Lazy Lizard club in New Haven during the early hours of May 18, 2013, an argument ensued between them and another group of individuals in the vicinity of the club. *State* v. *Myers*, supra, 178 Conn. App. 103–104. "The argument escalated to a physical altercation . . . [resulting in] officers of the New Haven police stepp[ing] in and caus[ing] the groups to disperse." Id., 104. The petitioner, Crooks, and Pope then drove to a second location, after which they once again encountered the other group. Id. "Some provocative remarks were made and the two groups moved toward each other." Id.

At this point, according to Crooks' testimony at trial, Crooks "heard gunshots, and he turned to see the [petitioner] holding a gun. Two bullets [had] struck and killed . . . Drew, who was a member of the other group, and stray bullets [had] injured two bystanders." Id. Six days after the shooting, however, "Rountree, while in custody on an unrelated matter, revealed to the police that he was Drew's friend and was present when Drew was shot." Id. "Rountree identified *Pope*," not the petitioner, "as the shooter." (Emphasis added.) Id.

At trial, the petitioner's trial counsel made the strategic choice not to raise or pursue a claim of self-defense. Consequently, the most, if not only, viable theory of the case that trial counsel could pursue at trial was that the petitioner was not the shooter. As the majority states, trial counsel hired a private investigator to locate Rountree and to serve on him a subpoena ad testificandum. Despite the fact that the private investigator served the subpoena on Rountree on May 28, 2015, which required that Rountree appear in court the following day, Rountree failed to appear in court on May 29, 2015. Trial counsel requested that the court issue a capias warrant to locate Rountree over the weekend and to secure his attendance at trial the following Monday, June 1, 2015. The court issued a capias warrant, but a marshal was unable to locate Rountree to serve the capias warrant on him, and he failed to appear to testify on June 1, 2015.

After informing the court that the authorities were unable to locate Rountree, the court asked trial counsel whether the defense had "[a]ny additional requests," to which trial counsel answered, "[n]o." Instead, and in lieu of Rountree's live testimony, trial counsel offered into evidence Rountree's recorded statement to the police, in which he identified Pope as the shooter, under

the residual exception to the hearsay rule. Due to the narrowness of the residual exception to the hearsay rule, and in light of the facts that Rountree had provided his statement to the police while incarcerated in connection with an unrelated matter six days after the shooting; see *State* v. *Myers*, supra, 178 Conn. App. 104; and that Rountree was not under oath when he provided the statement to the police, the court determined on June 1, 2015, that Rountree's recorded statement was inadmissible under the residual exception. Specifically, the court determined, the statement did not satisfy the requirement of the residual exception that the statement be "supported by equivalent guarantees of trustworthiness and reliability" necessary for its admission. Conn. Code Evid. § 8-9.

After the court concluded that Rountree's recorded statement was inadmissible, trial counsel made no additional effort to secure Rountree's live testimony. Significantly, trial counsel did not request a continuance to try to locate Rountree and to secure his testimony in court. Instead, and almost immediately after the court made its ruling,[1] the defense rested without presenting any additional evidence. Shortly thereafter, the parties proceeded to closing argument. Despite the court informing the jury that the evidentiary portion of the trial likely would last "five to six days,"[2] the evidentiary portion of the trial had taken only four full days—May 26, 27, 28 and 29, 2015—with the defense resting on the beginning of the fifth day of the trial, June 1, 2015, and closing argument taking place that same day. During the trial, the jury did not hear testimony from any witness, or see any other evidence, supporting an assertion that Pope, not the petitioner, was the shooter.

Despite failing to present evidence advancing the theory that Pope was the shooter, trial counsel nonetheless argued during closing argument that Pope, and not the petitioner, had shot Drew. Specifically, trial counsel argued, "[t]here's another person who has been developed as a suspect . . . [specifically] Pope, [and] all [of] the evidence points to the fact that he" shot Drew. Trial counsel, however, failed to identify any specific evidence that corroborated the petitioner's alternative shooter theory. During its rebuttal argument, counsel for the state easily undermined the petitioner's alternative shooter theory by repeatedly asking the jury whether it had seen any evidence to corroborate that theory and reciting the evidence that the state had presented to prove that the petitioner was the shooter, including Crooks' eyewitness testimony. The jury subsequently found the petitioner guilty of murder and two counts of assault in the first degree. See *State* v. *Myers*, supra, 178 Conn. App. 103.

Having set forth the relevant factual context, I briefly reiterate the legal principles that govern claims of ineffective assistance of counsel. The United States

Supreme Court, in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted a two part test "[t]o determine whether a defendant is entitled to a new trial due to a breakdown in the adversarial process caused by counsel's inadequate representation . . . . First, the defendant [or petitioner in the habeas context] must show that counsel's performance was deficient. This requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment [to the United States constitution]. Second, the defendant [or petitioner] must show that the deficient performance prejudiced [his] defense. This requires [a] showing that counsel's errors were so serious as to deprive the defendant [or petitioner] of a fair trial, a trial whose result is reliable. Unless [the] defendant [or petitioner] makes both showings, it cannot be said that [his] conviction . . . resulted from a breakdown in the adversary process that renders the result [of conviction] unreliable." (Internal quotation marks omitted.) *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 30, 188 A.3d 1 (2018), cert. denied,    U.S.   , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019).

"With respect to the first component of the *Strickland* test, the proper standard for attorney performance is that of reasonably effective assistance. . . . Consequently, to establish deficient performance by counsel, a [petitioner] must show that, considering all of the circumstances, counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms." (Citation omitted; internal quotation marks omitted.) Id., 31. "The first prong [of the *Strickland* test] requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 537 n.4, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009). "[T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action [of counsel] might be considered sound trial strategy." (Internal quotation marks omitted.) *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 31.

"[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 627, 212 A.3d 678 (2019). "[I]n some instances even an isolated error can support an ineffective-assis-

tance claim if it is sufficiently egregious and prejudicial . . . [but] it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." (Internal quotation marks omitted.) *Doan* v. *Commissioner of Correction*, 193 Conn. App. 263, 284 n.10, 219 A.3d 462, cert. denied, 333 Conn. 944, 219 A.3d 374 (2019).

In *People* v. *Clamuextle*, 255 Ill. App. 3d 504, 505, 508, 626 N.E.2d 741, appeal denied, 155 Ill. 2d 567, 633 N.E.2d 8 (1994), the defendant claimed on direct appeal from his conviction of aggravated battery that he had been "deprived of the effective assistance of counsel when his attorney failed to seek a continuance during trial in order to secure the presence of an alibi witness." The defendant had been charged with aggravated battery after a victim was stabbed in her apartment building. Id. The victim identified the defendant as the assailant to her roommate and subsequently to the police. Id., 505–506. When, however, a police officer interviewed the victim's roommates on the night of the attack, none of the roommates could identify the assailant. Id., 506. Further, no weapon or blood was found in the vicinity of the area of the apartment in which the attack took place, and the police searches of the defendant's apartment uncovered no evidence that he was involved in the attack. Id. The police found bloodstains on the defendant's pants on the night of the attack, but the victim's blood was not detected on the defendant's pants. Id.

At trial, the defendant called his roommate to testify on his behalf, and his roommate testified that, five minutes after the attack allegedly had taken place, she saw the defendant at the restaurant at which she worked. Id., 507. The roommate, however, admitted during cross-examination that her husband and the victim previously had a romantic affair and, accordingly, she "did not get along with" the victim. Id. Following the roommate's testimony, the defendant's trial counsel informed the court that the final defense witness, the roommate's coworker, had failed to appear in court pursuant to a subpoena with which she had been served.[3] Id. The coworker later averred in an affidavit that, had she appeared at trial, she would have testified that "she had seen the defendant at the restaurant . . . approximately [ten minutes before the attack], at which time [the pair] engaged in a brief conversation," and that "[a]pproximately [ten] to [fifteen] minutes later, she observed the defendant in the . . . lobby of the restaurant." Id., 508. The state presented rebuttal evidence, including the testimony of the victim, who confirmed the romantic relationship between herself and the roommate's husband. Id. Despite the fact that the court "stated [that] it would allow . . . the defense . . . to reopen its case when [the coworker] appeared" to testify; id., 507; counsel for the defendant "determined that the [coworker] still had not arrived [follow-

ing the victim's rebuttal testimony] . . . [and] rested without seeking a continuance to locate [the coworker]." Id., 508.

On appeal, the defendant argued that his trial counsel "had been ineffective for failing to seek a continuance when [the coworker failed to] appear [in court] pursuant to a subpoena" that had been served on her. Id., 508. The court, citing *Strickland* v. *Washington*, supra, 466 U.S. 687, first considered whether "his counsel's representation [of him] fell below an objective standard of reasonableness"; *People* v. *Clamuextle*, supra, 255 Ill. App. 3d 509; and noted that the "theory of defense at trial was that the defendant could not have stabbed [the victim] in her apartment building at [the purported time of the attack] . . . because at that time he was either en route to or already present at . . . [the] restaurant." Id. The court stated that, at trial, the "only witness to testify . . . about the defendant's presence in the restaurant"; id.; was the roommate, whose "credibility was damaged . . . on cross-examination . . . ." Id. The court noted, "[t]his [wa]s not a case where the evidence against the defendant was overwhelming. . . . The case . . . hinged on whether a jury would either believe [the victim's] testimony that the defendant was the assailant, or [the roommate's] testimony that at the time of the stabbing the defendant was at the restaurant . . . ." Id., 510. Because the roommate's "credibility had been damaged, [the coworker's] testimony that she, too, saw the defendant at the restaurant was the key evidence in support of the alibi defense." Id. Specifically, "[the coworker's] testimony that she spoke with the defendant at the restaurant [ten minutes before the purported time of the attack] and saw him [in the lobby of the restaurant fifteen] minutes later would have corroborated [the roommate's] testimony [concerning the defendant's presence at the restaurant] and bolstered the defendant's alibi defense." Id., 509–10. Further, the coworker "had no . . . obvious reasons to testify in favor of the defendant," unlike the roommate. Id., 511.

The court acknowledged that counsel for the defendant had contended that he "did not seek a continuance . . . to locate [the coworker] . . . because he did not know why she had failed to appear." Id., 510. The court stated, however, that "counsel did not need this information in order to request a continuance" under Illinois law; id.; because "[a] motion for a continuance sought to secure the presence of a witness should be granted [if]: (1) the defendant was diligent in attempting to secure the witness for trial; (2) the defendant shows that the testimony was material and might affect the jury's verdict; and (3) the failure to grant the continuance would prejudice the defendant." Id. "All three [requirements] were met in this case, [but] defense counsel [nonetheless] mistakenly believed that he did not have sufficient information to request a continu-

ance." Id. Thus, the court determined that the failure of counsel for the defense "to seek the continuance in order to locate a material witness did not constitute trial strategy but . . . instead [was] an objectively unreasonable error." Id. Because the coworker's "testimony in support of the defendant was . . . so important to the defendant's alibi defense," the court determined that "counsel's error in not seeking a continuance to locate her undermine[d] confidence in the outcome of the proceeding." Id., 511.

Other courts, like the court in *Clamuextle*, have determined that, under the relevant factual circumstances of the cases before them, counsel rendered deficient performance by failing to request a continuance. In *Dunn* v. *Jess*, 981 F.3d 582, 594–95 (7th Cir. 2020), for example, the United States Court of Appeals for the Seventh Circuit concluded that a defendant's trial counsel's performance was deficient when, inter alia, counsel failed to request a continuance to review certain expert reports he received shortly before trial, which contained exculpatory information. See also *Woolley* v. *Rednour*, 702 F.3d 411, 415, 423 (7th Cir. 2012) (counsel's performance was deficient when counsel failed to request continuance to take remedial measures after state untimely disclosed expert opinion on first day of trial), cert. denied sub nom. *Woolley* v. *Harrington*, 571 U.S. 821, 134 S. Ct. 95, 187 L. Ed. 2d (2013); *Turpin* v. *Bennett*, 272 Ga. 57, 57–58, 525 S.E.2d 354 (2000) (counsel's performance was deficient when counsel failed to request continuance to locate new expert witness or take other remedial measures after defendant's initial expert suffered from dementia episode while testifying at trial); *People* v. *Vera*, 277 Ill. App. 3d 130, 138–39, 660 N.E.2d 9 (1995) (counsel's performance was deficient when counsel failed to request continuance to hire interpreter to translate from Spanish to English contents of audio recording, which allegedly included exculpatory information), appeal denied, 167 Ill. 2d 567, 667 N.E.2d 1062 (1996).

Having considered the facts of the present case in light of the foregoing, I disagree with the habeas court's determination that trial counsel's performance was not deficient. Because, as I have stated, trial counsel elected not to pursue a claim of self-defense, the most, if not only, viable theory of the case that trial counsel could have pursued at trial was that the petitioner was not the shooter. To successfully pursue this theory, it was crucial for trial counsel to raise reasonable doubt as to whether the petitioner was the actual shooter. The only viable way trial counsel could cast such reasonable doubt would be to present testimony from at least one witness that the weapon that caused Drew's death was in the hands of a person other than the petitioner at the time the shots were fired. The state's case was extremely strong, unless trial counsel presented before the jury some evidence that supported this alternative

shooter theory.

Like in *People* v. *Clamuextle*, supra, 255 Ill. App. 3d 510, the petitioner's success at trial depended on whether the jury believed Crooks' testimony that the petitioner was the shooter, or Rountree's testimony that Pope was the shooter. Unlike in *Clamuextle*, however, Rountree's testimony would not simply have "bolstered" or "corroborated"; see id.; the petitioner's alternative shooter theory; Rountree's testimony would have been the *only* evidence that supported the petitioner's theory of the case. As the habeas court noted in its memorandum of decision, "Rountree was the only person who identified Pope as the shooter, so the [petitioner's alternative shooter theory] *hinged* on [the admission of] Rountree's [recorded] statement [or] testimony." (Emphasis added.)

Given these high stakes, in my view, trial counsel was obligated to take additional steps to ensure that Rountree's testimony identifying Pope as the shooter was presented before the jury. It was not sufficient for trial counsel to attempt to have admitted Rountree's recorded statement under the residual exception to the hearsay rule. Section 8-9 of the Connecticut Code of Evidence, which sets forth the residual exception to the hearsay rule, "allows a trial court to admit hearsay evidence not admissible under any of the established [hearsay] exceptions"; (internal quotation marks omitted) *State* v. *Bennett*, 324 Conn. 744, 762, 155 A.3d 188 (2017); but *only* "if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." Conn. Code Evid. § 8-9. As this court and our Supreme Court have iterated, "[t]he residual hearsay [exception] [should be] applied in the *rarest* of cases . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Bennett*, supra, 762; see also *State* v. *Heredia*, 139 Conn. App. 319, 331, 55 A.3d 598 (2012), cert. denied, 307 Conn. 952, 58 A.3d 975 (2013). "[T]he [residual] exception is not to be treated as a broad license to admit hearsay inadmissible under other exceptions, and is to be used *very rarely* and *only in exceptional circumstances*." (Emphasis added; footnote omitted.) *State* v. *Dollinger*, 20 Conn. App. 530, 540, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990).

Given the circumstances, the probability was slim that a court would have concluded that "there [was] a reasonable necessity for the admission of the statement, *and* . . . the statement [was] supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule"; (emphasis added) Conn. Code Evid. § 8-9; such that the statement should

be admitted under the residual exception. The bitter reality was that it was highly unlikely that the court would conclude that Rountree's recorded statement was admissible under that narrow exception. After the court concluded that Rountree's recorded statement was inadmissible under the residual exception to the hearsay rule, trial counsel then had little choice but to ask the trial court for additional time to find Rountree and to compel his appearance so that he could testify before the jury. I can divine no reason, strategic or otherwise, as to why his trial counsel should not have taken such a simple step.

In concluding that the petitioner had failed to prove that his trial counsel's performance was deficient, the habeas court relied on the facts that trial counsel hired a private investigator to serve a subpoena on Rountree, requested a capias warrant after Rountree failed to appear at trial, and attempted to enter into evidence Rountree's recorded statement under the residual hearsay exception. By relying on these facts, however, the habeas court overlooked the reality that, once the trial court concluded that Rountree's recorded statement was inadmissible, the need for Rountree's live testimony heightened drastically, because, at that point, the petitioner's alternative shooter theory entirely "hinged on" the ability to secure Rountree's live testimony. Notwithstanding this critical need, trial counsel made *no* effort to secure Rountree's live testimony—including, but not limited to, requesting that the trial be continued a few more days to attempt to locate Rountree. Trial counsel's failure to request a continuance, in my view, was objectively unreasonable, given how vital Rountree's in-court testimony was to the petitioner's case and in light of the heightened need for Rountree's live testimony after the court concluded that his recorded statement was inadmissible.

The majority concludes in its opinion that the petitioner has failed to "overcome the presumption" that trial counsel's decision not to request a continuance was " 'sound trial strategy.' " See *Holloway* v. *Commissioner of Correction*, 145 Conn. App. 353, 365, 77 A.3d 777 (2013). In its view, "undertaking additional efforts to locate [Rountree] . . . might have resulted in jurors becoming unavailable and/or the fading of jurors' memories concerning the petitioner's case." As I have noted, however, the court explained to the jury during its opening remarks that the parties expected the evidentiary portion of the trial to last approximately "five to six days." The court additionally stated to the jurors, "[o]f course that's only an estimate; the trial may go a little longer or a little shorter than that." The court concluded that Rountree's recorded statement was inadmissible on the beginning of the fifth day of the trial—after only four full days of evidence—and the defense rested almost immediately after the court made its ruling. Once the defense rested, the parties immediately proceeded

to closing arguments. Thus, the entire evidentiary portion lasted only four days, as opposed to five or six days as the jury initially had been advised.

Because the court informed the jury that the evidentiary portion of the trial would last five to six days, it is reasonably likely that at least twelve of the fifteen jurors would have been available to continue to serve if trial counsel requested, and the court granted, a continuance of a few additional days. Had trial counsel requested such a continuance, the court could have taken one of the following actions: granted the request and continued the trial a few days; denied the request, which the petitioner could have challenged on direct appeal had he subsequently been convicted; or inquired of the jurors whether a brief continuance would create any barriers to the jurors' continued service. Because, however, trial counsel never requested a continuance, the court never asked the jurors whether a continuance would make it difficult for them to serve. The court could not deny, or express any concern it had regarding the ramifications of, a request that trial counsel never made. Likewise, because trial counsel never requested a continuance of the trial for a few days, there is no way of knowing whether undertaking additional efforts to locate Rountree, as the majority states, "may well have been futile . . . ." Because, in my view, the petitioner's trial counsel performed deficiently by failing to request a continuance to locate Rountree and to secure his testimony, I conclude that the habeas court improperly determined that the petitioner failed to meet its burden of establishing that his trial counsel performed deficiently.

I next turn to the prejudice prong of the *Strickland* test—that is, whether trial counsel's deficient performance prejudiced the petitioner's defense at trial. See *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 30. In its memorandum of decision, the habeas court provided the following conclusory statement as to the prejudice prong of the *Strickland* test: "The petitioner has also not shown how any deficient performance was prejudicial. Rountree did not testify in the habeas trial and, even assuming the showing of deficient performance has been satisfied, this court lacks an evidentiary basis to assess the prejudice prong of the *Strickland* test." I interpret this statement by the court to mean that it had evaluated the prejudice prong on the basis of the evidence before it—or lack thereof, with respect to Rountree's testimony—and determined that the petitioner had not met his burden as to prejudice.

In determining that the petitioner had failed to prove prejudice, the habeas court based its conclusion entirely on the fact that Rountree did not testify before the habeas court. The reason, however, that the court could not consider Rountree's testimony is because Rountree failed to appear at the habeas trial and the

court denied the petitioner's request for the issuance of a capias warrant and a continuance to secure his appearance at trial. In my view, the court abused its discretion in denying the petitioner's request for the issuance of a capias warrant and corresponding request for a continuance.

The following additional procedural history is relevant. After the respondent, the Commissioner of Correction, filed a return to the petitioner's amended petition for a writ of habeas corpus, the petitioner, who was representing himself, filed two applications for the issuance of subpoenas, including one for Rountree. On September 14, 2020, a subpoena was issued and served on Rountree. At the time he was served the subpoena, Rountree was incarcerated.

As the majority explained, "[i]t was the petitioner's belief, based on the information available on the Department of Correction's website, that Rountree would be released from custody after October 8, 2020," the initial date of the habeas trial. Accordingly, the petitioner reasonably believed that, because Rountree would be incarcerated at the time of the habeas trial, Rountree's presence and testimony at the habeas trial had been secured. The petitioner learned in late September, 2020, however, that Rountree's release date had been changed to October 2, 2020. To ensure that Rountree would appear at the habeas trial to testify, the petitioner filed, through his standby counsel, a motion dated September 24, 2020, to move the date of the habeas trial from October 8, 2020, to October 1, 2020. The court denied the motion without prejudice because the requested date of October 1, 2020, was "unavailable for trial."

The habeas trial subsequently occurred on October 7 and 8, 2020, and, on October 8, 2020, the petitioner attempted to call Rountree to testify. By this date, Rountree already had been released from incarceration. Rountree failed to honor his subpoena and to appear in court to testify. The petitioner thus requested that the habeas court issue a capias warrant to secure Rountree's attendance at the habeas trial. In connection with this request, the petitioner additionally requested that the habeas trial be continued for the purpose of locating Rountree and effectuating the capias. The petitioner initially requested that the trial be continued until the earlier of the following dates: the date on which in-person hearings, which at that time had been suspended pursuant to the coronavirus pandemic, resumed, or the date on which Rountree was located. The petitioner, however, later clarified that a continuance of one month would be sufficient.

The court denied the petitioner's request for the issuance of a capias warrant and the corresponding request for a continuance. The court stated that the petitioner had the opportunity to secure Rountree's testimony

prior to the habeas trial by way of deposition, interview, or recorded statement. The court also stated that the petitioner's "last minute request" to move the trial date "could not be accommodated by the court." The court ultimately concluded that, because Rountree may have been located in New Jersey at the time of the habeas trial, Rountree had declined to provide his location to the petitioner's private investigator when asked, and Rountree had indicated to the petitioner's private investigator that he had changed his mind about testifying, it "[saw] no reasonable basis to grant [the petitioner's request for a] capias [warrant]" and found "no reasonable basis to . . . continue th[e] matter . . . ."

As our Supreme Court has stated, "[i]f one is not warranted in refusing to honor a subpoena and it is clear to the court that his absence will cause a miscarriage of justice, the court should issue a capias to compel attendance. [It is] not, however . . . mandatory for the court to issue a capias when a witness under subpoena fails to appear; issuance of a capias is in the discretion of the court. The court has the authority to decline to issue a capias when the circumstances do not justify or require it. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Footnote omitted; internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 330 Conn. 1, 32–33, 190 A.3d 851 (2018), cert. denied sub nom. *Greene* v. *Semple*, U.S. , 139 S. Ct. 1219, 203 L. Ed. 2d 238 (2019).

In my view, the court abused its discretion by denying the petitioner's requests for the issuance of a capias warrant and a corresponding continuance to secure Rountree's appearance at the habeas trial for several reasons. First, Rountree's expected testimony identifying Pope, rather than the petitioner, as the shooter was critical to the issue of prejudice. The admission of this testimony at the habeas trial was essential for the petitioner to meet his burden as to the prejudice prong of the *Strickland* test.[4]

Second, the petitioner had taken several steps to ensure Rountree's attendance at the habeas trial by requesting that a subpoena be issued for and served on Rountree. The petitioner believed that Rountree would be incarcerated at the time of the habeas trial based on the information available on the Department of Correction's website and, accordingly, would testify at the habeas trial. In accordance with this belief, there was little need for the petitioner, who was incarcerated and representing himself, to depose Rountree. Once he learned that Rountree's date of release from incarceration fell before the date of the habeas trial, he wisely moved to change the date of the habeas trial. Despite the petitioner's efforts, Rountree slipped out of the petitioner's grasp after he was released from incarceration.

Given these circumstances, it was by no fault of the petitioner that Rountree failed to appear to testify at the habeas trial. Cf. *Greene* v. *Commissioner*, supra, 330 Conn. 32–33 (citing, as reason for concluding that habeas court did not abuse its discretion when it denied petitioner's request for issuance of capias warrant to secure witness' appearance at habeas trial, fact that "the court reasonably could have concluded that the petitioner was partially responsible for [the witness'] failure to appear" at habeas trial).

Third, the court provided no justification for its determination that it was unreasonable to delay the habeas trial for one month. Unlike the petitioner's criminal trial, the habeas trial was a bench trial; there were no jurors who might have become unavailable if the habeas court granted the petitioner's requests for a capias warrant and a continuance of one month to locate Rountree. The fact that the marshal service "potential[ly]" may have faced difficulty locating Rountree echoes the very reason that the petitioner sought to have the habeas trial date moved in the first place—because the petitioner was concerned that Rountree's presence at trial would be difficult to secure if he was released from incarceration. The fact that the marshal service "potential[ly]" may have faced difficulty locating Rountree likewise demonstrated why the petitioner's request for a capias warrant was reasonable—because Rountree successfully had evaded the subpoena with which he had been served.

In light of the foregoing, in my view, the habeas court improperly determined that the performance of the petitioner's trial counsel was not deficient. Additionally, I conclude that the habeas court abused its discretion by denying the petitioner's request for the issuance of a capias warrant and the corresponding request for a continuance to secure Rountree's appearance at the habeas trial. Because it abused its discretion and, thus, did not hear Rountree's testimony, the court did not have the opportunity to assess properly the issue of prejudice—a limitation of the court's own doing. Thus, to the extent that the court nonetheless concluded that the petitioner failed to prove prejudice, I would reverse that determination. Consequently, I would remand the case to the habeas court with direction to grant the petitioner's request for the issuance of a capias warrant to secure Rountree's appearance, and to hold a new trial on the issue of prejudice.

For these reasons, I respectfully concur and dissent.

[1] After the court concluded that Rountree's recorded statement was inadmissible, the court asked the parties whether they would like to be heard as to the court's proposed jury instructions and, after the parties declined, summoned the jury to return to the courtroom. After the jury returned to the courtroom and counsel stipulated to the presence of the jurors, the defense rested.

[2] Specifically, the court stated in its opening remarks to the jury on the first day of the trial: "As I've told you, the lawyers have informed me they expect the evidentiary portion of this trial to take approximately *five to six*

*days*. Of course that's only an estimate; the trial may go a little longer or a little shorter than that. . . . [I]t's inevitable that there will be some delays during the trial, unanticipated things always happen." (Emphasis added.)

[3] In an affidavit that the defendant filed in connection with a posttrial motion for judgment notwithstanding the verdict or, alternatively, a new trial, the coworker averred that she had informed counsel for the defendant that she was unavailable to appear to testify in court on the date listed on the subpoena and that she "mistakenly [had] thought that she was not supposed to be in court until 1:30 p.m. on" the date on which she was available to appear. *People* v. *Clamuextle*, supra, 255 Ill. App. 3d 508. She further averred that "she learned that she was supposed to have appeared in the morning [on the date on which she was available to appear] only after the case had gone to the jury for deliberation." Id.

[4] Additionally, Rountree's testimony—the content of which we have no way of knowing with certainty—may very well have been relevant to the issue of trial counsel's deficient performance. For example, if Rountree testified that, at the time of the criminal trial, he easily could have been located, that fact would make stronger the petitioner's argument that trial counsel should have requested a continuance of the trial date for a few days to locate Rountree.